MARTIEN, RESPONDENT, *v.* PORTER, STATE AUDITOR, ET AL., APPELLANTS.

(No. 5,391.)

(Submitted September 29, 1923. Decided October 20, 1923.)

[219 Pac. 817.]

**TAX COMMISSION CASE.**

*Constitution—Amendment—Legislative Procedure—Substantial Compliance—When Sufficient—State Board of Equalization —Creation—Validity.*

Constitution—Legislative Enactments—Validity—Rule.
    1. Where a legislative Act is attacked on the ground of its unconstitutionality, the question presented is not whether it is possible to condemn but whether it is possible to uphold, the presumption being in favor of its validity, and it will be upheld unless its unconstitutionality appears beyond a reasonable doubt.

Same—Construction—Rules Applicable.
2. In the construction of constitutional provisions the rules pertaining to the interpretation of statutes are applicable, and, if possible, effect must be given to every section and clause of the Constitution.

Same—Amendment—Validity—Courts may Go Back of Enrolled Bill.
3. The rule that courts cannot go back of an enrolled bill to ascertain the regularity of the legislative proceedings further than to see whether the aye and nay vote was entered upon the journals of the respective houses does not apply with respect to a bill proposing an amendment to the Constitution, since in such a case the legislature does not act within its inherent power to legislate but in the exercise of its delegated power to submit a proposal which does not become effective until ratified by the vote of the people.

Appeal—*Obiter Dicta* not Binding on Supreme Court.
4. Expressions in an opinion of the supreme court upon a question not before it for decision, do not control its judgment in a subsequent action when the very point is presented for determination.

Constitution—Liberal Construction—Maxim *"Expressio Unius,"* etc., Applicable.
5. The Constitution should receive a liberal interpretation, especially with respect to the provisions designed to safeguard the liberty and security of the citizen, and in its construction resort may be had to the maxim *expressio unius est exclusio alterius.*

Same — Amendment — Legislative Procedure — Substantial Compliance With Constitutional Requirements Sufficient, When.
6. Section 9, Article XIX, of the Constitution provides *inter alia* that a proposed amendment thereto shall be entered in full on the journals of both houses. A bill proposing an amendment to section 15, Article XII, creating the state board of equalization, was properly passed by both houses but, while it was entered in full on the journal of the house, it was not so entered in the senate journal. The bill acted upon in both houses was in identically the same language, identifying reference to it having been made in the senate journal, and as passed was published by the secretary of state and ratified by the people. *Held,* that the course pursued, though not literal compliance with the constitutional provision, was in substantial compliance therewith, the object of the requirement—certainty as to the proposed amendment—having been clearly established by the journals. (ASSOCIATE JUSTICES COOPER and 'GALEN dissenting.)

Same—"Substantial Compliance"—Definition.
7. With respect to the provisions of the Constitution prescribing the legislative procedure for its amendment, there is a substantial compliance if the object to be accomplished,—the protection of a right or the conferring of a benefit,—has been as fully attained as if there had been a literal compliance and there has been no resulting injury from a failure to literally comply therewith.

Judgment on Pleadings—Admissions.
8. A motion by plaintiff for judgment on the pleadings admits the truth of all material allegations of defendant's answer.

---

6. Effect of noncompliance with the prescribed methods of amending the Constitution, see notes in 6 A. L. R. 1227; 10 L. R. A. (n. s.) 149.

*Appeal from District Court, Lewis and Clark County, in the First Judicial District; Jos. R. Jackson, a Judge of the Second District, presiding.*

ACTION by C. H. Martien against George H. Porter, State Auditor, and others, for injunction. From an adverse judgment, defendants appeal. Reversed and remanded, with directions.

*Mr. Wellington D. Rankin,* Attorney General, for Appellants, submitted a brief and argued the cause orally.

There was a substantial compliance with the Constitution. The vital question in this case is whether the amendment to section 15 of Article XII of the Constitution of Montana was invalidated because it was not entered *in full* in the journal of the senate. It is not denied that it was duly passed by the required majority of both houses, signed by the presiding officers thereof, published as required by the Constitution by the secretary of state, and voted upon and approved by a majority of the electors of the state at the next general election. In fact, it is admitted that every provision of section 9 of Article XIX of the Constitution has been fully and regularly complied with, except that part which states that proposed amendments "shall be entered in full on their respective journals," and that even that part was complied with by the house of representatives.

While the Constitution is silent relative to the method to be followed by the legislature in passing a proposed constitutional amendment through the two houses thereof, it has been the custom in this state, ever since the state was admitted to the Union, to handle such proposals in the same manner as is handled a bill for a statutory enactment. Therefore, when the amendment to section 15 of Article XII was proposed and made its first appearance on the floor of the senate, it was in the form of a bill, and received the caption of Senate Bill No. 11, and, as such, passed through the

several stages of legislation until finally enrolled, signed by the presiding officers of the two respective houses and approved by the governor of the state. So there can be no question that the proposed amendment finally submitted to and approved by the people of the state at the general election of 1922 was the same amendment proposed by the extraordinary session of the seventh legislative assembly.

There are two essential factors to be considered in amending our Constitution: (a) That the proposed amendment be voted for by not less than two-thirds of each house of the legislature; (b) that it be approved by a majority of the electors of the state voting thereon at the next general election. The several entries relative to the proposed amendment required to be shown in the journals of the two houses are merely evidentiary records to show that such proposed amendment passed through the routine of introduction, report and adoption. The journals become merely an index of the proceedings of the bodies, from which a member may ascertain at any time the status of any business or matter which is the subject of legislative consideration.

When a bill or a resolution is finally enrolled and signed by the presiding officers of the house and senate that is the official attestation of the two houses of such bill or resolution as the identical one that has been passed. (*Field* v. *Clark*, 143 U. S. 649, 36 L. Ed. 294, 12 Sup. Ct. Rep. 495 [see, also, Rose's U. S. Notes].)

In section 9, Article XIX, we find a provision of equal weight with that which states that the proposed amendment be entered in full on the journals, namely, that such proposed amendment must be ''published in full in at least one newspaper in each county (if such there be) for three months previous to the next general election.'' This very provision was before this court in the case of *State ex rel. Hay* v. *Alderson*, 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210, and it was there held that substantial compliance with that provision was sufficient.

[68 Mont. 450.]

We submit that the reasoning therein shown applies to a failure to strictly comply with the provision relative to entering the amendment in full on the journals. The publication of a proposed amendment is for the sole purpose of giving the people of the state full knowledge of the proposed amendment, while the entry in the journal can be of no effect other than to give the members of the legislature information relative to the matter before them, and, unless it is affirmatively made to appear that the absence of such entry had the effect of misleading the members, no substantial injury can result from the omission. This cannot be in any manner shown here, because the "entry in full on the journal" is intended to take place after the final vote and not before. It is obvious that the failure to publish in full is fraught with much greater danger than could possibly result from a failure to enter in full on the journal.

This question has been before the courts of many states, in some of which the Constitution requires "entry in full," and others merely "entry."

The case of *Nesbit* v. *People,* 19 Colo. 441, 36 Pac. 221, is a Colorado case, in which the facts are practically identical with those in the case at bar, and the constitutional provision is identical with ours. The court there declined to follow the Iowa case of *Koehler* v. *Hill,* 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; and upheld the amendment. In the later Colorado case of *People* v. *Sours,* 31 Colo. 369, 102 Am. St. Rep. 34, 74 Pac. 167, the court adopted the language of the *Kansas Constitutional Prohibitory Amendment Cases,* 24 Kan. 700, and held that the omission of a legislative employee to insert an amendment in the house journal did not invalidate the amendment.

Florida, which has a constitutional provision similar to Kansas (sec. 1, Art. XVII), agrees with the Kansas court in the case of *West* v. *State,* 50 Fla. 154, 39 South. 412.

Wisconsin, with a similar provision, in the case of *State ex rel. Postel* v. *Marcus,* 160 Wis. 354, 152 N. W. 419, decided

in 1915, reviews fully the authorities *pro* and *con*. In this case the court, having before it the same question as here presented, first decided that failure to enter the proposed amendment in full rendered the submission void. On a rehearing, however, the court reversed its former decision and adopted the modern rule sanctioned by greater weight of authority.

Section 1, Article XVII, Constitution of Oregon, also requires entry in the journal, and the supreme court of that state, in the very recent case of *Boyd* v. *Olcott*, 102 Or. 327, 202 Pac. 431, 442, after reviewing and analyzing the authorities on both sides, came to a conclusion which supports appellants' contention.

In the case of *Gottstein* v. *Lister*, 88 Wash. 462, Ann. Cas. 1917D, 1008, 153 Pac. 595, the supreme court of Washington in decision rendered in 1915, and in the case of *Cudihee* v. *Phelps*, 76 Wash. 314, 136 Pac. 367, held that under a constitutional provision of that state regarding proposed amendments to be entered on the journals, an entry referring to a proposed amendment in the language of its title was sufficient without copying the proposed amendment in the journals in full.

Maryland, whose Constitution (sec. 1, Art. XIV) requires entry on the journals, has reached the same conclusion herein contended for, and in the case of *Worman* v. *Hagan*, 78 Md. 152, 21 L. R. A. 716, 27 Atl. 616, it was held that a proposed constitutional amendment need not be set out *verbatim* in the legislative journals where the bill is fully identified by its title and the houses each had the bill in their possession when it was passed and the bill was fully and clearly identified by its title.

The Constitution of California (sec. 1, Art. XVIII) provides that amendments shall be entered in the journals. In the case of *People* v. *Strother*, 67 Cal. 624, 8 Pac. 383, it was held that an entry in full was not required. Later, in *Oakland Paving Co.* v. *Hilton*, 69 Cal. 479, 11 Pac. 3, the

court held to the contrary, but in a still later case, *Oakland Paving Co.* v. *Tompkins,* 72 Cal. 5, 1 Am. St. Rep. 17, 12 Pac. 801, reversed the *Hilton Case* and returned to the rule of the *Strother Case.*

Similarly the state of South Dakota, under a constitutional provision that proposed amendments shall be entered on the journals, held that the proposition for the amendment which had been entered in full upon the journal of one of the houses and by title only upon the journal of the other was sufficiently entered upon the journals of the two houses within the meaning of the above constitutional provision. The facts therein presented were identical with those before this court, and in *State ex rel. Adams* v. *Herrid,* 10 S. D. 109, 72 N. W. 93, the court follows a former South Dakota case,—*Lovett* v. *Ferguson,* 10 S. D. 44, 71 N. W. 765.

There is even more reason for entering a proposed amendment in full on the journals of the house and senate in North Dakota than in Montana, because in that state the Constitution requires that two separate legislative assemblies must pass a proposed amendment before it is submitted to the people. Therefore, an entry in full would be of considerable value to the second legislature as making certain that the preceding legislature had actually passed the proposed amendment. Yet, in the case of *State* v. *Hall,* 44 N. D. 459, 171 N. W. 213, the court held that, where the amendment was entered in the house journal by an identifying reference and the aye and nay vote shown, it was sufficient.

The respondent relies upon *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582, decided in 1899, to sustain his contention. We submit that that case should not be considered as conclusive upon this court, for three reasons: First, it is clearly not a well-considered decision, as an examination of the cases cited as authority for the opinion will disclose; second, it is *dictum.* The question was not a part of the case pending before the court; was not essential or necessary to the decision, and was not an issue in the case. It was injected into the case by

the court, and therefore amounts to nothing more or less than
a personal, not a judicial, opinion of the members of the
court.    It lacks the force of an adjudication, is in no sense
a part of the judgment in the particular case, and is not
binding as a precedent.  It is entitled to receive nothing more
than the respect due to the opinion of the judge who utters
it.   (*Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 Pac. 863;
*Moser* v. *Talman*, 114 App. Div. 850, 100 N. Y. Supp. 231;
*Commonwealth* v. *Paine*, 207 Pa. 45, 56 Atl. 317; *Lancaster
County* v. *McDonald*, 73 Neb. 453, 103 N. W. 78.)   Our third
reason is that *Durfee* v. *Harper*, if it ever had the dignity of a
decision of this court, was in effect overruled and reversed by
the decision in the case of *State ex rel. Hay* v. *Alderson,
supra.*

*Mr. Charles R. Leonard* and *Mr. Walter L. Pope, Amici
Curiae,* submitted briefs in aid of appellants' contentions and
argued the cause orally.

*Mr. E. B. Howell, Mr. Thomas M. Murn* and *Mr. M. R. Wilson,
Amici Curiae,* argued the cause orally, maintaining that the
doctrine announced in *State ex rel. Hay* v. *Alderson, supra,*
should be followed.

*Mr. C. A. Spaulding,* for Respondent, submitted a brief and
argued the cause orally.

The only question for the consideration of this court is the
legal effect of the admitted failure to comply with a plain
mandatory constitutional provision.  If this admitted failure
has no effect upon a proposed amendment to our Constitution,
then the judgment rendered by the lower court must be re-
versed.  If it has any effect upon such proposed amendment,
that judgment must be affirmed.  Inasmuch as this court un-
equivocally declared in the case of *Durfee* v. *Harper*, 22 Mont.
354, 56 Pac. 582, that such a failure as is here admitted
nullified a proposed amendment notwithstanding a majority

vote therefor of the qualified voters thereafter voting thereon, and since this decision, standing in full force to-day, has become the law of this state, of binding force and efficacy upon this court as upon all others, any real necessity for further exploitation of the question would seem to be a work of supererogation.

Appellants appear to concede that our constitutional provision requiring that proposed amendments should be "entered in full" on the journals is mandatory; but it is urged that this court is committed to the doctrine of "substantial compliance" and that in the present instant case such compliance was had. The case of *State ex rel. Hay* v. *Alderson*, 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210, is cited to sustain the doctrine so contended for. It is argued that this court there held "That the expressed will of the people should not be thwarted because of the failure to comply, literally, with the requirements of the Constitution." It is true that the court in that case laid down the so-called rule that, with reference to publication of proposed amendments, substantial compliance with a mandatory provision is sufficient. But the case has no pertinency here because (1) the opinion deals only with publication of an amendment; (2) proper proposal of an amendment by the legislature, and (3) the expression of popular will are in terms excluded from the operation of the so-called rule of substantial compliance. This rule of substantial compliance is in this case held to be subordinated to the two requirements of "proper proposal" by the legislative assembly and "expression of the popular will." But if the rule of substantial compliance could apply to such a case as the present, *State ex rel. Hay* v. *Alderson, supra,* is authority for respondent because, as the court says: "No one can seriously insist that in every detail the proceedings for publication * * * did not substantially comply with the requirements of section 9, Article XIX." Admittedly there can be no substantial compliance where there is utter failure to even attempt compliance. Here there is complete absence of every

word of the proposed amendment so far as the senate journal is concerned. If in the instant case there had been an attempt to enter the proposed amendment upon the senate journal, and by inadvertence or otherwise a word or two had been omitted, there might be room for the contention that the rule of ''substantial compliance'' should be applied. There is, however, no room for invoking that rule where, as here, no single word of the proposed amendment is to be found in the senate journal. The entry in full upon the journals of both houses is a part of the proper proposal of the amendment by the legislature, and therefore is indicated in the above case to be a factor of paramount importance and must be complied with. (See, also, *State* v. *Wetz*, 40 N. D. 299, 5 A. L. R. 731, 168 N. W. 835; *Hamilton* v. *Deland*, 221 Mich. 541, 191 N. W. 829; *Johnson* v. *Craft*, 205 Ala. 386, 87 South. 375; *Hammond* v. *Clark*, 136 Ga. 313, 38 L. R. A. (n. s.) 77, 71 S. E. 479.)

A very clear and concise analysis by the supreme court of Wisconsin of the meaning of the requirement that the amendment shall be entered in full upon the journals of both houses is found in the case of *State ex rel. Postel* v. *Marcus*, 160 Wis. 354, 152 N. W. 419, which is also referred to by counsel for the appellants. In that case the Constitution required that the proposed amendment should ''be entered on their journals.'' The original opinion in that case held that, although it was not required that the amendments should be entered in full on the journals, nevertheless such was the proper construction of the word ''entered.'' However, on rehearing the court held that the word ''entered'' did not require entry in full. That case is particularly significant here when the fact conditions surrounding the rendition of the opinion on rehearing is considered. The court, as indicated, held in the first instance that the phrase ''entered on their journals'' required entry in full. Discovering that nineteen out of the twenty-five amendments to the Constitution of Wisconsin had not been entered in full on the journals of both

houses, but only on one, and that such amendments were of the most far-reaching character, even involving the right of some of the judges of the supreme court to hold office, and finding further that millions of dollars had been expended on the faith of the regularity of enactment of such amendments, and finding further that such amendments ranged in point of time of adoption from 1865 to 1915, the court granted a rehearing of its own motion and reversed its holding previously made that entry in full was required. The significance here of that holding on rehearing lies in the fact that it is based not upon entry upon one journal being a "substantial compliance" with the constitutional provision, but upon the doctrine that the phrase "entered upon their journals" did not require entry in full. The court will note that appellants' interpretation of this Wisconsin case at page 16 of their brief is wholly erroneous in its assumption that entry upon the journal of one house constituted substantial compliance with the Constitution.

It would seem obvious from the facts here involved and from the numerous expressions of opinion of the various courts of this country hereinbefore set out that there is an obvious distinction between substantial compliance with a mandatory provision as against a literal technical compliance therewith and, on the other hand, an entire failure to comply with such mandatory provision at all. In the case at bar we have a situation wherein a mandatory requirement is performed in substance, although not in technical and literal form.

While it is true that in the case of *Durfee* v. *Harper*, 22 Mont. 373, 56 Pac. 589, the proposed constitutional amendment involved was not entered upon the journals of either house, that case is clearly in point and holds that a failure to enter the proposed amendment in full upon the journals of both houses renders the amendment void. In other words, in that case there were two omissions to perform two separate mandatory requirements of the Constitution, whereas in the case at bar there was one omission to perform a mandatory re-

quirement, to-wit: failure to enter the proposed amendment in full in the journal of the senate. The proposition resolves itself into a total omission rather than a failure to comply technically with a constitutional requirement. (See, also, *Koehler* v. *Hill*, 60 Iowa, 543, 14 N. W. 738, 15 N. W. 609; *McMillan* v. *Blattner*, 67 Iowa, 288, 25 N. W. 245; *State ex rel. Bailey* v. *Brookhart*, 113 Iowa, 250, 84 N. W. 1064; *McCreary* v. *Speer*, 156 Ky. 783, 162 S. W. 99.)

Counsel for the appellants also relies on the *Constitutional Prohibitory Amendment Cases*, 24 Kan. 700, and *West* v. *State*, 50 Fla. 154, 39 South. 412, in support of his contention. The latter case just mentioned cites with approval the former case. The authority of these cases is considerably weakened, if in fact they should be considered *contra*, by the holding of the supreme court of Florida in the case of *Crawford* v. *Gilchrist*, 64 Fla. 41, Ann. Cas. 1914B, 916, 59 South. 963, decided by the same court which decided the case of *West* v. *State, supra.*

Counsel further says that this court should repudiate *Durfee* v. *Harper* because the views therein expressed are mere *dictum*, and that the matter passed upon was not necessary to the decision. The matter decided was indispensable to any decision, for without a court to pass upon the cause it could not be decided. The constitutional question went directly to the authority of the court to call in a district judge to sit, hear and determine causes. Nothing could have been more vital to the cause of *Durfee* v. *Harper* than the right of the court, as constituted, to determine it.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action in equity, instituted by the plaintiff for the purpose of obtaining an injunction to restrain the defendants George P. Porter, as state auditor of the state of Montana, and O. H. Junod, as state treasurer, from paying any salaries to the members of the state board of equalization or the employees thereof, on the ground that the amendment

to section 15 of Article XII of the state Constitution, under which said board was created, is invalid as not having been proposed and submitted to the people of the state by the extraordinary session of the seventeenth legislative assembly in accordance with section 9 of Article XIX of the Constitution.

The only irregularity to which attention is directed and of which complaint is made is that the proposed amendment, together with the ayes and nays thereon, was not entered in full upon the journal of the senate. The senate proceedings will be shown in the latter part of this opinion. For present purposes, it is sufficient to state that a bill submitting the proposed amendment to the electors was passed in both house and senate by a two-thirds vote of the members elected to each house, enrolled, signed by the presiding officer of each house, and approved by the governor, but the full text thereof was not entered in the senate journal.

At the next ensuing general election the secretary of state caused the proposed amendment to be advertised as required by the Constitution, and at the election the same received a majority of the votes cast thereon, which were properly canvassed, the result declared, and thereafter in regular course the governor proclaimed that the amendment had become a part of the state Constitution.

Pursuant to the provisions of this amendment the legislative assembly enacted Chapter 3 of the Session Laws of the eighteenth legislative assembly, providing the necessary statutory law to carry out the provisions of the amendment, and under this law the defendants J. W. Walker, O. A. Bergeson and A. J. Violette were appointed as a state board of equalization, thereafter duly qualified, entered upon the discharge of their duties and have continued so to act down to the present time.

Subsequent to the filing of the complaint the defendants filed their answer, and later on counsel for the respective parties filed a stipulation containing certain extracts from the senate journal of the extraordinary session of the seventeenth legis-

lative assembly, which they agreed constitute and are the only references to the amendment under consideration which appear thereon. Thereafter the plaintiff made and filed a motion for judgment in his favor upon the complaint, answer and stipulation. This motion was heard by the court on September 5, 1923, and was sustained. In accordance with the order of the court sustaining the motion a judgment was entered granting to the plaintiff the relief prayed for; from this judgment the defendants appealed to this court.

Section 9 of Article XIX of the Constitution reads as follows: "Amendments to this Constitution may be proposed in either house of the legislative assembly, and if the same shall be voted for by two-thirds of the members elected to each house, such proposed amendments, together with the ayes and nays of each house thereon, shall be entered in full on their respective journals; and the secretary of state shall cause the said amendment or amendments to be published in full in at least one newspaper in each county (if such there be) for three months previous to the next general election for members to the legislative assembly; and at said election the said amendment or amendments shall be submitted to the qualified electors of the state for their approval or rejection and such as are approved by a majority of those voting thereon shall become part of the Constitution. Should more amendments than one be submitted at the same election, they shall be so prepared and distinguished by numbers or otherwise that each can be voted upon separately; provided, however, that not more than three amendments to this Constitution shall be submitted at the same election."

From the foregoing facts and the provisions of the Constitution above quoted it is apparent that the sole [1, 2] question presented for decision is whether the amendment to section 15 of Article XII is invalid because the same, together with the ayes and nays thereon, was not "entered in full" on the senate journal.

We enter upon a consideration of this case, bearing in mind a rule of construction dictated by reason and sanctioned by authority and long usage, that whenever an Act of the legislative assembly is assailed as unconstitutional, the question presented to the court is not whether it is possible to condemn but whether it is possible to uphold.

In the early case of *Brown* v. *Maryland,* 12 Wheat. 419, 6 L. Ed. 678 [see, also, Rose's U. S. Notes], Chief Justice Marshall declared: "It has been truly said, that the presumption is in favor of every legislative Act, and that the whole burden of proof lies on him who declares its unconstitutionality." It has been invariably held by this court that the constitutionality of an Act of the legislature will be upheld unless its unconstitutionality appears beyond a reasonable doubt. (*In re O'Brien,* 29 Mont. 530, 1 Ann. Cas. 373, 75 Pac. 196; *Northwestern Mut. Life Ins. Co.* v. *Lewis and Clark County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982; *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Missouri River Power Co.* v. *Steele,* 32 Mont. 433, 80 Pac. 1093; *Spratt* v. *Helena Power Transmission Co.,* 37 Mont. 60, 94 Pac. 631; *State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095.)

The same rules are applied in the construction of the Constitution as in the construction of statutes (*Dunn* v. *City of Great Falls,* 13 Mont. 58, 31 Pac. 1017)., and, if possible, effect must be given to every section and clause (*Montana Coal & Coke Co.* v. *Livingston,* 21 Mont. 59, 52 Pac. 780).

At the outset we are confronted with a contention by the [3] attorney general that it is not competent for the court to go back of the enrolled bill to ascertain the regularity of the legislative · proceedings, save only for the purpose of ascertaining whether the aye and nay vote was entered upon the journals of the respective houses, and in that connection he cites the decisions of this court holding to that principle, the last of which is *State ex rel. Woodward* v. *Moulton,* 57 Mont.

414, 189 Pac. 59, wherein the former decisions of this court on the subject are collected. The rule of these cases would, of course, hold good if this were an ordinary legislative proceeding for the enactment of a law, but such is not the case.

When the legislative assembly proposes an amendment to the Constitution it "is not in the exercise of its legislative power or any sovereignty of the people that has been intrusted to it, but is merely acting under a limited power conferred upon it by the people" to make such a proposal. (Jameson on Constitutional Conventions, 2d ed., Chap. 8; *Ellingham* v. *Dye*, 178 Ind. 336, Ann. Cas. 1915C, 200, 99 N. E. 1; *Livermore* v. *Waite*, 102 Cal. 113, 25 L. R. A. 312, 36 Pac. 424.)

The reason of the rule which forbids the court to go back of an enrolled bill to inspect the journals to ascertain whether the legislature, in passing a law, observed the constitutional requirements, is that, by the terms of section 1 of Article IV of the Constitution, the government of the state is divided into three distinct departments: legislative, executive and judicial, neither of which is permitted to exercise any power properly belonging to the other, except when expressly directed or permitted so to do. Each of these three branches is supreme in its own domain, and in the exercise of the duties imposed upon it the other branches are not permitted to interfere.

All of the cases cited by the attorney general have to do with the enactment of a bill or statute under the power vested in the legislature by Article V of the Constitution. They have no reference to Acts of the legislature in proposing amendments to the Constitution under section 9 of Article XIX. The Constitution does not prescribe the method which shall be pursued in submitting such a proposal. It may be by bill or by joint resolution, but in either event it is a mere proposal and does not become effective until ratified by a vote of a majority of the electors at the polls. Being a mere proposal made by the legislature in the exercise of its delegated power, and not in the exercise of its inherent power

to legislate, it is not an invasion of the legislative department for the court to look to the journal entries in reference to such proposal to determine the regularity of the proceedings. For this reason the rule contended for by the attorney general has no application here.

The above-mentioned section 9 of Article XIX of the Constitution first came before this court for construction in the year 1894, in the case of *State ex rel. Woods* v. *Tooker, County Clerk,* 15 Mont. 8, 25 L. R. A. 560, 37 Pac. 840, which involved a proposed amendment to section 4 of Article XVI of the Constitution providing for the election of county commissioners at the general election of 1894. The specific objection made to the constitutional amendment in that case was that the secretary of state had not published the same in the newspapers for a period of three months previous to the election as required, but instead of doing so had only published the same for a period of · two weeks. This dereliction on the part of the officer was so clearly a noncompliance with the Constitution that the court, in a decision written by Mr. Justice DeWitt, held that the proposed amendment had not become a part of the Constitution, although a majority of the electors had voted for it at the general election. In the course of his opinion the learned Justice used language which indicated that the rule of literal compliance should be applied to the provisions under consideration relative to publication. Such a holding was not necessary in order to reach the conclusion which he did, since no one would have contended that publication for two weeks was a substantial compliance with a direction that the same should be made for a period of three months.

In 1899 section 9 of Article XIX again came before the court for consideration in the case of *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582. In that case, however, the question was only incidental to the main issues. The attempted amendment to the Constitution there under consideration involved an addition to section 5 of Article VIII, authorizing the judges

of the supreme court (which then consisted of three members), in case any of its members should in any way be disqualified to sit in a case, to call in a district judge to sit with them in the hearing thereof in place of the one disqualified. When the cause was set down for argument, Chief Justice Brantly being disqualified, the two remaining Justices had called Judge Henry of the sixth judicial district to sit in his place, but before the case was called for hearing it was suggested to the court by Colonel W. F. Sanders that Judge Henry could not properly sit therein for the reason that the amendment to the Constitution under the provisions of which he had been called in had not been legally proposed for adoption, inasmuch as it had never been entered in full on the respective journals of the two houses of the assembly. Thereupon the court of its own motion caused an investigation to be made of the legislative records of the two houses which had attempted to submit the amendment. While the opinion in the case merely recites that the proposed amendment had never been entered in full on the respective journals of the two houses, the fact is that it was not entered at all on the journal of either house, and the title of the so-called bill incorporating the proposed amendment did not even correctly refer to the section of the Constitution which it was sought to amend. From an inspection of the legislative journals alone, and without extrinsic evidence, it was impossible to determine what measure had passed the senate and house. In the course of the opinion it was held that the attempted amendment had not become a part of the Constitution because of the defects above pointed out. The question of substantial compliance with the provisions of the Constitution was not considered in the case at all. In fact, under the conditions disclosed by the record, it could not have been properly suggested; but in the course of the opinion Mr. Justice Hunt, speaking of the provisions of the Constitution generally, said: "There is no discretion in that body [the legislature] to ignore the commands of the fundamental authority, or override

its limitations in great or small matters." If by this language the court intended to declare that there must be a literal compliance with every procedural detail in submitting a proposed amendment to the electors and that rule of construction should still prevail, then the attempted amendment involved in the present case must fall by the wayside. However, in the decision of that case it was not necessary for the court, in order to reach the conclusion which it did, to go to the extent of declaring so strict a rule of construction as the one which might be deduced from the language used.

[4]

In speaking of the force and effect of prior decisions of the court as precedents, Mr. Chief Justice Marshall, in the case of *Cohens* v. *Virginia*, 6 Wheat. (U. S.) 264, 399, 5 L. Ed. 257 [see, also, Rose's U. S. Notes], used the following language: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

In *State ex rel. Hay* v. *Alderson*, 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210, decided in 1914, the same section once again came before the court for consideration in connection with a proposed amendment to section 1 of Article V of the Constitution, being the initiative and referendum measure. Two objections to the proposed amendment were made in that case, one of which related to the sufficiency of the publication of the proposed amendment by the secretary of state. The court determined from the record then before it that there had not been a literal compliance with the re-

[5-7]

quirements of section 9 of Article XIX, and said in effect
that if the rule of literal compliance with the provisions of
that section were to prevail, then the attempted amendment
under consideration had not been properly submitted to the
electors and consequently was a nullity. In that case the
court was confronted for the first time with the question
whether it would adhere to the rule requiring a literal compli-
ance with all of the procedural requirements of this section
which had been intimated in *State ex rel. Woods* v. *Tooker* and
*Durfee* v. *Harper,* or whether these provisions, confessedly
mandatory, would be sufficiently met by a substantial com-
pliance therewith. The court was at the parting of the
ways—if the rule of literal compliance was. adopted it would
make a proposed amendment to the Constitution practically
impossible. The court said: "But the enforcement of such a
rule would also defeat the very purpose of the provision under
consideration. Our Bill of Rights declares: 'The people of
the state have the sole and exclusive right of governing them-
selves, as a free, sovereign and independent state, and to alter
and abolish their Constitution and form a government, when-
ever they may deem it necessary to their safety and happiness,
provided such change be not repugnant to the Constitution of
the United States.' (Const., Art. III, sec. 2.) Section 9,
Article XIX, deals with but one subject—amendments to the
Constitution. In its adoption it was not the purpose of the
people to render their fundamental law incapable of change,
but, on the contrary, to provide a plain, simple, and easily
executed method of amendment," and instead of adopting the
rule of literal compliance, held that the mandatory provisions
of the Constitution for its own amendment, in the absence of
any intimation that injury, substantial or unsubstantial, re-
sulted, were satisfied by a substantial compliance therewith.
The requirement that the proposed amendment shall be pub-
lished in a newspaper in each county of the state during
the prescribed period is for the purpose of advising the elec-
tors of the very change which is sought to be made in the

fundamental law, and is at least equally as important as the one which requires that the proposed change shall be entered upon the journals of the two houses of the legislative assembly. If one of these requirements is satisfied by a substantial compliance therewith, no good reason appears why the same rule should not apply to the other.

The rule of construction so adopted by this court has stood unchallenged from 1914 to this date. We are now asked to discard it and revert to the rule of literal construction intimated in the two Montana cases first above cited. This we must decline to do. We think the rule is the correct one, not alone for the cogent reasons announced to support it in the decision, but because it is justified by the provisions of the Constitution itself.

To illustrate the meaning of the last statement, reference is made to certain sections of Article V of the Constitution:

Sec. 19. "No law shall be passed except by bill.    *    *    *    "

Sec. 22. "No bill shall be considered or become a law unless referred to a committee, returned therefrom, and printed for the use of the members."

Sec. 24. "No bill shall become a law except by a vote of a majority of all members present in each house, nor unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered on the journal."

No doubt can exist but that the above provisions must receive a literal construction. The doctrine of substantial compliance announced in *State ex rel. Hay* v. *Alderson* has no application to them. Such has been the ruling of this court in many cases, among which may be cited *State ex rel. Peyton* v. *Cunningham,* 39 Mont. 197, 18 Ann. Cas. 705, 103 Pac. 497, and *Palatine Ins. Co.* v. *Northern Pac. Ry. Co.,* 34 Mont. 268, 9 Ann. Cas. 579, 85 Pac. 1032. If the command of section 29 of Article III, that all "the provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise," requires literal construction of each and every procedural mandate, there was no necessity

to particularly designate some provisions, in language which unmistakably compels such construction.

In this connection attention is directed to section 8 of Article XIX, which provides for the submission of amendments to the Constitution by a convention called for that purpose. This section closes with the express declaration: "And unless so submitted and approved by a majority of the electors voting at the election, no such revision, alteration or amendment shall take effect," whereas section 9 of that Article contains no such prohibitory clause.

"In construing a Constitution, resort may be had to the well-recognized rule of construction contained in the maxim, *expressio unius est exclusio alterius,* and the expression of one thing in a Constitution may necessarily involve the exclusion of other things not expressed." (6 R. C. L., p. 49, sec. 43.)

It is a fundamental canon of construction that a Constitution should receive a liberal interpretation, especially with respect to those provisions which were designed to safeguard the liberty and security of the citizens. (6 R. C. L., p. 49, sec. 44.) "No court of justice can be authorized so to construe any clause of the Constitution as to defeat its obvious ends when another construction, equally accordant with the words and sense thereof, will enforce and protect it." (*Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 539, 10 L. Ed. 1060 [see, also, Rose's U. S. Notes].)

At the time our Constitution was adopted in 1889, there were thirty-seven other state Constitutions in force. Of these, thirty-five either had no provision regulating the journal entries of proposed constitutional amendments or else contained provisions that they should be "entered on their journals," or words to that effect. Only the Constitutions of Colorado and Illinois contained provisions like the one adopted in Montana, requiring that a proposed amendment should be entered "in full" on the respective journals of the houses of the legislature. Our attention has not been directed to any Illinois case construing this constitutional provision. The Colorado court first

had this section of the Constitution presented to it for consideration in the case of *Nesbit* v. *People*, 19 Colo. 441, 36 Pac. 221, and afterward the same provision was involved in the decision of the case of *People* v. *Sours*, 31 Colo. 369, 102 Am. St. Rep. 34, 74 Pac. 167. In each of these cases the court in effect held that the section does not require a literal interpretation, but that it is sufficiently met by a substantial compliance with its provisions.

From the rule laid down in *State ex rel. Hay* v. *Alderson*, it appears that the mandatory provisions of section 9, Article XIX, other than those which require the amendment to be proposed by a two-thirds vote of the members elected to each house, entered by the ayes and nays upon their respective journals, and the approval thereof by a majority of the electors voting thereon, are satisfied by a substantial compliance therewith, in the absence of any intimation that injury, substantial or unsubstantial, resulted.

What, then, is meant by "substantial compliance"? Obviously it denotes something not easy to define and often difficult to apply. Indeed, it is a term not susceptible of exact definition. We conceive that to make application of the doctrine to constitutional provisions, other than those falling within the class above pointed out, the primary inquiry should be directed to ascertaining the ultimate object to be attained thereby, *i. e.*, what right is to be protected or what benefit conferred, and secondarily, what mode has been prescribed to guarantee the attainment of the ultimate object.

We must ascertain, by a process of inclusion and exclusion, whether, from the facts as they appear in the record, there has been, in truth, such a course of action considering the object to be accomplished (*i. e.*, the protection of a right or conferring of a benefit) by the mode indicated for its attainment, though not literally following such mode, it can be said that the object has been fully attained without any resulting substantial or unsubstantial injury. If this condition is found to exist, then, although the prescribed mode of attainment has been deviated

from in some particulars, not detracting from the right to be protected or the benefit to be conferred, still the right has been protected and the benefit conferred as fully and completely as though the mode of attaining the object had been literally followed, then there has been a substantial compliance.

Having proceeded thus far, let us now advance another step and re-examine section 9 of Article XIX in connection with two other sections of the Constitution.

Section 2 of Article III of the Constitution, which reserves to the people the right to alter and amend the Constitution, being a part of the Bill of Rights, is set out in full in a preceding paragraph hereof. If we were to exalt any provision of the Constitution above the others it would be difficult to find a more important one than this, since it insures to the people of the state the right to change, alter, or amend their fundamental law as they may desire by a process of evolution instead of revolution. To make secure this reserved right to alter the fundamental law of the state there was included in the Constitution, section 9 of Article XIX, which has already been referred to, and also section 8 of the same Article, which provides in effect that the legislative assembly may at any time, by a vote of two-thirds of the members elected to each house, submit to the electors of the state the question whether there shall be a convention to revise, alter, or amend the Constitution, and if a majority of those voting on the question shall declare in favor of such convention the legislative assembly shall at its next session provide for the calling of the same.

It thus appears that there are two methods by which an amendment to the Constitution may be properly proposed; First, by a convention called for that purpose by a majority vote of the electors when the proposal has been submitted to them by a two-thirds vote of the members elected to each house of the legislative assembly; and, second, by a vote of two-thirds of the members elected to each house. In either of these methods the ultimate object to be accomplished is to permit the qualified electors to exercise the right to alter or

amend their fundamental law, which right has been reserved by section 2 of Article III, above quoted. It was declared by this court, in *State ex rel. Hay* v. *Alderson, supra:* "The proper proposal of the amendment by the legislature and the will of the people expressed at the polls in favor of such amendment are clearly emphasized as the factors of paramount importance in effecting a change of our Constitution. (*Constitutional Prohibitory Amendment Cases,* 24 Kan. 700.) Whatever may be said of the rigidity with which the rules of law must be drawn whenever either of these paramount factors is in issue, we are clearly of the opinion that any question which may arise upon other features of the amending process is referable to the rule of substantial compliance, even though the provision of the Constitution invoked is mandatory." Stress is laid upon the two paramount factors—proper proposal by the legislature, and the vote of the electors at the polls. In the Kansas case cited and relied upon in the foregoing decision it is said: "The two important, vital elements in any constitutional amendment are the assent of two-thirds of the legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because by them certainty as to the essentials is secured. But they are not themselves the essentials."

Reverting now to what we have heretofore indicated as being our understanding of what constitutes a substantial compliance, we again observe that the ultimate object to be obtained in either of the two methods laid down for amending the fundamental law is to have the proposed amendment submitted to the qualified electors for them to pass upon, and if approved by a majority it shall then be incorporated in the Constitution. The amendments in the Kansas case, in *State ex rel. Hay* v. *Alderson* and in the instant case, were each proposed by the second of the indicated constitutional methods, *i. e.,* by direct action of two-thirds of the members elected to each house of the legislative assembly. Under this method, as declared by the Kansas court, beyond the two-thirds vote of the members elected to each

house and the approval by a majority of the voters at the polls, all the other requirements are mere machinery and forms which must be followed to secure certainty in the essentials, but they are not the essentials. If certainty in the essentials is secured, though the mode of attaining it laid down in the Constitution has not been literally followed but has been deviated from in some particulars not at all detracting from the right of the electors to vote upon the identical amendment which has been proposed, we ought not to say that the ultimate object has not been attained by reason of failure to literally follow the specific method prescribed for its attainment. In other words, under such conditions we should hold that there has been a substantial compliance with the prescribed mode.

Certainty being the object to be attained by the requirement that the proposed amendment, "together with the ayes and nays of each house thereon shall be entered in full on their respective journals," we have left the inquiry as to whether that object has been attained in this instance.

The proposed amendment under consideration first made its appearance by an entry on page 768 of the senate journal as follows: "The following bills were introduced, read first and second times and referred: Senate Bill No. 11, by Greenup. A bill for an Act entitled 'An Act for the submission to the qualified electors of the state of Montana of an amendment to section fifteen of Article XII of the Constitution of the state of Montana, as amended, creating county boards of equalization and a state board of equalization, and defining and prescribing their powers and duties.' Referred to committee on judiciary." The next entry concerning the same is on page 770 of the senate journal and is as follows: "The committee on judiciary submitted the following report: 'Mr. President: We your committee on judiciary, to whom was referred S. B. No. 11 introduced by Greenup, being a bill for an Act entitled "An act for the submission to the qualified electors of the state of Montana of an amendment to section fifteen of Article XII of the Constitution of the state of Montana, as amended, creating

county boards of equalization and a state board of equalization, and defining and prescribing their powers and duties,'' having had the same under consideration, respectfully report and recommend that the same do pass. Burlingame, Chairman.' Report adopted.'' The bill followed the regular course of legislation, was printed and considered by the committee of the whole, whose report upon the same appears at page 779 of the senate journal, as follows: ''March 19, 1921. Mr. President, Your committee of the whole to whom was referred business on general file, respectfully report that we have had under consideration Senate Bill No. 11 and recommended that the same do pass. T. P. Stewart, Chairman. Report adopted.'' And on the same page of the senate journal appears this entry: ''Third Reading of Bills. Senate Bill No. 11 having been read at length three several times, was passed by the following vote,'' following which are recorded the names of those voting for and against the bill, showing forty-five ayes, three noes, and six absent and not voting. Thereafter the bill was transmitted to the house of representatives, where it was duly passed by the required two-thirds vote, entered in full, together with the ayes and nays, upon the house journal, returned to the senate by the house, with a report that it had been *concurred* in, duly enrolled and signed by the president of the senate and the speaker of the house, all of which facts are shown upon the senate journal.

The identifying references to Senate Bill No. 11 on the journal of the senate, coupled with the entry of this measure in full upon the journal of the house, discloses with certainty exactly the measure which was proposed in the senate and passed by it and the house of representatives, in each instance by the requisite two-thirds vote of all members elected to each, and thereby the ultimate purpose of the constitutional requirement was fulfilled in substantially the mode prescribed. Unless certainty as to the proposed amendment had been clearly established by the legislative journals themselves, the rule under

consideration would have no application and the measure would fail.

· We deem it advisable to again point out, as was done in *State ex. rel. Hay* v. *Alderson,* that if the attack on the proceedings had been made prior to the election of 1922, it might have prevailed, "but the general rule is that every reasonable intendment will be indulged in favor of the validity of a constitutional amendment after its ratification by the people at the polls"—citing *People* v. *Sours, supra.*

For the reason heretofore indicated we have thus far confined our observations upon the question of certainty to the entries appearing upon the legislative records.

Turning now to the pleadings in the case, we find, in paragraph 1 of the second affirmative defense set up in the defendants' answer, an allegation that said Senate Bill No. 11 was passed by and concurred in by the house of representatives "in the exact form and language as the same was introduced in and passed by the senate." And in paragraph 3 thereof, "That said Senate Bill No. 11, proposing said constitutional amendment, as introduced in said senate, as passed by it, as concurred in by the said house of representatives, as enrolled in said senate, as signed by the president of said senate and speaker of said house of representatives, as approved by the governor of this state, as published by the secretary of state, as ratified by the people at the general election on November 7, 1922, and as published with the laws of this state, is identically and *verbatim* the same."

The plaintiff's motion for judgment on the pleadings [8] amounted to an admission of the truth of all material allegations of the defendants' answer, and so for the purposes of the record which is presented to this court these allegations must be accepted as true.

It is further pleaded in the answer, and likewise admitted to be true, that for a long time before the general election of 1922 this proposed amendment was discussed to such an extent from the public platform and through the public press

that it became a paramount issue of the campaign with a very large majority of the people of the state and that its adoption was "actively, bitterly, and vigorously opposed by the plaintiff herein."

Upon this state of the record, since plaintiff's rights were fully protected, and he took complete advantage of the same, we do not think a court of equity should now reach out with the extraordinary writ of injunction to stay the operation of the amendment to the Constitution so adopted. To do so would be to interpret the Constitution by the letter which killeth rather than by the spirit which giveth life; compel a process of reasoning so refined that it would enable one to

"    *    *    *    distinguish and divide

A hair 'twixt south and southwest side,"

and do violence to the age-old maxim that equity regards substance rather than form.

The judgment of the district court is reversed and the cause remanded, with directions to enter a judgment in favor of the defendants.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE HOLLOWAY concur.

MR. JUSTICE COOPER, Dissenting: I cannot concur in the opinion of the majority of the court. In expressing my dissent therefrom, I shall endeavor to make myself so plain that laymen as well as lawyers may know the precise question in the case and my views in relation thereto.

The bill in question is an amendment to the Constitution providing for a state tax commission in place of the old constitutional board of equalization. The proposed amendment was agreed to by both houses of the legislature, submitted to the people and adopted. It is now claimed that it was not properly proposed by the legislative assembly, for the reason that it was not entered in the senate journal. In order to solve the question it is necessary to examine the Constitution.

[68 Mont. 450.]

Section 9 of Article XIX provides as follows: "Amendments to this Constitution may be proposed in either house of the legislative assembly, and if the same shall be voted for by two-thirds of the members elected to each house, such proposed amendments, together with the ayes and nays of each house thereon, *shall be entered in full on their respective journals.*"

Was the omission to enter the proposed amendment in full on the senate journal fatal? The Constitution itself says that all its provisions are *mandatory* and *prohibitory*. The word "mandatory" as defined by all the dictionaries means *an authoritative command*. In other words, when a thing is declared to be mandatory it is equivalent to saying, "*It must be done this way.*" Applied to this proposed amendment it means: "The only way this Constitution can be amended is to enter the proposed amendment in full on the journals of *both* the senate and house." The word "respective" has a well-defined meaning. It can in no possibility apply to *one* thing or to *one* person. Webster defines the word to mean "several" as "their respective homes." How, then, can it be said that this provision was complied with when no attempt was made to enter the body of the proposed amendment on the journal of the senate?

The precise question now before the court was decided in the case of *Durfee* v. *Harper*, 22 Mont. 354, 56 Pac. 582, at a time when no political consequences could flow from the decision one way or the other. It was held that a failure to enter a proposed amendment in full on the journals of *both* houses rendered the amendment void. I can see no reason why that decision should be qualified in the least now, because in my judgment it correctly interprets the Constitution. If one mandatory provision of the Constitution may be swept aside or disregarded, then all the fundamental safeguards may meet the same fate, and we shall be left without any constitutional guaranties at all. It is not for us to question why the Constitution so declares; the command is there, in all its strength, and I feel it to be the duty of this court to enforce it. To my

mind there never was a time in the history of the republic when more danger was to be apprehended from indifference to constitutional mandates.

Here it may not be out of place to inquire why the founders of our government preferred a written Constitution for the new government rather than to continue under the less rigid unwritten Constitution of the British Empire. As a result of long and thoughtful deliberation, eleven years after the Declaration of Independence, the Constitution of the United States was ordained. It provides, as does ours, that there shall be three departments in the government: The executive, the legislative and the judicial. Each department is forbidden to invade the province of either of the other two. This was a distinct departure from royal prerogative and a parliament possessed of all the attributes of omnipotence. The members of the federal convention, in debate, openly avowed that they "had no motive to be governed by the British Constitution" as their prototype, that the "fixed genius of the people of America required a different form of government," and that their sole aim was to found a commonwealth upon a written Constitution—one best calculated to fit, not ephemeral emotions, but the permanent temper of the people who were deliberating upon a new form of government for themselves. With some nineteen amendments it has withstood the storms of internecine conflict, resisted attacks from within and without, and still stands an unyielding guaranty of human liberty. Mr. Webster characterized a Constitution as the ligament which cements and holds together civilized human beings, and as the most enduring fabric of human society. Speaking of our own Constitution, Senator Wilbur F. Sanders, eminent lawyer, pioneer and statesman, wrote: It "surrounds its ministers with a panoply —they need no other companionship. With the law as their guide, they can hearken to no discordant voices. A judge, in his decisions, cannot consult public opinion, the voice of the multitude, the eagerness, the behest of greed or the voices of harpies that would lure him from the immutable justice. One

surrender to influences like these is like the tiger's first taste of blood." When the Constitution speaks upon a subject no "eye of doubt" should be cast upon it. All must acknowledge its supremacy. It is the "fountain from which all current runs or else dries up."

"Written Constitutions," says the supreme court of Indiana in *State* v. *Noble,* 118 Ind., at page 353, 21 N. E., at page 245 (10 Am. St. Rep. 143, 4 L. R. A. 101), "are the product of deliberate thought. Words are hammered and crystallized into strength, and if ever there is power in words, it is in the words of a written Constitution. · * * * Of all governmental instruments it is the most solemn and powerful. Its grants are unalterable, its delegations of power unchangeable and its commands supreme. Until the people themselves shall change or annul their Constitution, all must obey its mandates." Similar expressions of thought might be multiplied indefinitely. If it descends to minute particulars which tend to impair or obstruct the free operation of its machinery, it is still to be enforced as it is written, until the same authority which gave it life—the people—shall see fit to change it in the mode prescribed by the instrument itself, not by implication, not by indirection nor by the mere "winking of authority." Attempts to alter its commands by interpolation, by construction, by subtraction or addition of words, or excuses or condonations of neglect of its decrees are encroachments upon, if not usurpations of, its imperious authority.

In my opinion a reading of the section here involved makes plain the fact that its spirit is sunk so deep in its letter that the separation of one from the other cannot be effected without a sacrifice of the very life of it.

It is admitted that the entry of the title and the ayes and nays merely on the senate journal does not constitute an entry in full in the literal sense of the term. But it is earnestly and ably argued by the attorney general and reaffirmed by the friends of the court, that a substantial compliance is enough. Where, in the instrument itself, is there warrant for any such

interpretation? There is none. The cases of *State ex rel. Woods* v. *Tooker*, 15 Mont. 8, 25 L. R. A. 560, 37 Pac. 840, and *Durfee* v. *Harper, supra,* holding unequivocally that when a thing is not done according to constitutional commands it is not done at all, is correct in my opinion, especially when it is recalled that they were rendered almost contemporaneously with the framing of the Constitution, and while the considerations which entered into its composition were fresh in the minds of the people who adopted it, if not within the actual knowledge of the learned Justices (Chief Justices Pemberton and Brantly, and Associate Justices De Witt, Harwood, Pigott and Hunt) who participated in them. The reasoning therein is not only sound, but has for its bulwark the historical fact that until 1889 no state Constitution except that of Colorado had required more than skeleton entry of proposed amendments on the legislative journals. Yet, contemplating the experiences of other states for a period of 111 years, and realizing the necessity for more deliberation in the submission of constitutional amendments, the founders of our state government demanded that each house of the legislative assembly should see to it that all such proposed amendments actually were *"entered in full on their respective journals."* How could they have exhibited more determination to make its amendment a deliberate process, to be attended with a religious adherence to detail? How could they have expressed the command they did with more emphasis or more clearly?

If this court may say that the mandatory clauses of our Constitution, which do not declare the consequences that must follow their disobedience, require no more than a substantial compliance, what are we to say of the great muniments of personal liberty preserved in Article III? Could we, as a reviewing court, affirm the conviction of a defendant who had been tried for .the commission of a felony without a jury, over his demand for one? Upon the same assumption, are we prepared to say that excessive bail may be required of an accused, that cruel and inhuman punishment may be inflicted upon a pris-

[68 Mont. 450.]

oner, or that a fair and impartial trial may be denied the meanest citizen in contravention of the Bill of Rights (Const., Art. III)? And yet, nowhere in the instrument is there a declaration that a denial of these inalienable rights shall be fatal to a judgment of conviction. While it may be that all the mandatory provisions of our Constitution are not so inexorable as these, still the express commands addressed to each of the departments of our state government cannot be softened to meet prevailing moods, nor bent to conform to pressing necessities. Indeed, the proceedings of the constitutional conventions and judicial history of other states confirm the opinion that when the founders of our state government framed the Constitution of this state they expected of all its servants in each of the departments prompt obedience to all its decrees, and a will to carry out its directions with the spirit, as well as the letter of it, constantly in mind. This is the very essence of constitutional law.

The assertion that the law is a progressive science, with which step must be kept at all times, is a consideration which addresses itself more directly to the *law-making* bodies of the state. In them is reposed the duty to respond to the behests of the people for the enactment of laws which will meet the growing needs and satisfy their increasing ambitions. But judges, in their office, must remain passive until controversies are laid before them in the mode prescribed by law, must uphold plain constitutional commands, and must administer justice, uninfluenced and unmoved by the ebb and flow of human passions and, indeed, all extraneous influences.

MR. JUSTICE GALEN, Dissenting: With due reference and respect for the judgment of my Associates, I dissent. Many days have been devoted in earnest study of this case, and we have come to an honest difference of opinion.

Because the result reached clearly violates the Constitution, I cannot be a party to the judgment of reversal. The apology for such violation utterly fails to appreciate the spirit of

constitutional government. Salvaging the proposed constitutional amendment authorizing the appointment of a so-called state tax commission, desirable as it may appear to some people, does not in my judgment justify the court in disregarding the plain mandates of the Constitution. All agree that, had an application been made to this court for an injunction in advance of the election at which the constitutional amendment was submitted, an injunction would unhesitatingly have issued, and this due to the fact that the legislative assembly, as the agent of the people in formulating and submitting the proposed amendment, have flagrantly disregarded the Constitution. This being so, there is no logic in the position that a different rule should be applied following the election. It is just as proper to say that elections foreclose inquiry into all antecedent matters; and this, notwithstanding the fact the proposal was wrongfully adopted, in this instance, by a minority of the electorate.

As I view it, the majority subscribe to the rule of expediency rather than the rule of reason. Expediency should have no place in judicial decisions, more especially so when dealing with constitutional questions. The Constitution is the foundation of our governmental system, and in order to maintain and perpetuate the state its mandates must be adhered to and applied. Deviation in one instance justifies disregard in another. So that finally the Constitution becomes an instrument of no importance and our form of government must fall. Constitutional government has proved a success in America during the past 133 years, and largely due to the fact that the mandates of the sovereign people, expressed in their written Constitutions, have most generally been followed by the courts, however pressing the clamor of the hour.

By the express language of the Constitution, in words so plain as not to admit of doubt, a legislative proposal *must not* be written into the fundamental law *except* in the manner prescribed. This is a wise provision to the end that the people

may know, beyond doubt, the exact terms of any proposal for constitutional change emanating from the legislature.

The language of the Constitution is declared to be mandatory and prohibitory. We are commanded, and we are forbidden. What does this mean? Is it open to debate as to interpretation? Certainly not. This being so, we proceed to an examination of the proposed amendment in question to see if it has been submitted to the people as by the Constitution commanded. We find that the Constitution may be amended in only two ways: by constitutional convention, and by legislative proposal. As respects the first method prescribed (sec. 8, Art. XIX), *unless* the constitutional amendment is "so submitted" in the manner prescribed, no "revision, alteration, or amendment *shall take effect.*" The second and only other method of amendment permits the legislative assembly, as the agent of the people, to propose to the people, in their sovereign right, amendments to the Constitution by a vote of two-thirds of the members elected to each house, which proposed amendment "shall be entered *in full* on the" respective journals of both the house and senate (sec. 9, Art. XIX). Can it be seriously argued for a moment that the intent was to clothe the legislative assembly with greater powers than a constitutional convention? Mere statement of the question prompts immediate negative answer. Accordingly, the amendment proposed is of no effect "*unless so submitted,*" *i. e.,* in the manner prescribed, including the entry "*in full*" of the amendment to be submitted on the journals of both the house and senate. With the necessity or wisdom of this requirement we are not concerned. The mandate speaks in no doubtful or uncertain language and must be followed, otherwise the approval of the people, however emphatically pronounced at the polls, does not warrant the writing of the proposed amendment into the Constitution.

The people themselves have no authority to pass upon the question whether a legislative proposal shall be written into the fundamental law, unless it shall have been submitted to

[68 Mont. 450.]

them in the manner they prescribed in exercise of their original right to create a form of government. It follows, logically, that it is of no avail for the people by their votes to approve a proposed change of the Constitution, *if it shall not have been submitted* in such manner as they in their sovereign authority have commanded. This is so because our Constitution, like all American Constitutions, is a self-imposed yoke. We cannot depend on the Constitution for our benefits, and at the same moment be arrayed against its commands, however inconvenient.

I will agree that substantial compliance with constitutional requirements for the submission of a proposed amendment is sufficient; but utter failure to observe the necessary steps prescribed, as appears in this instance, does not warrant even suggestion of substantial compliance. Here there was no entry of the proposed amendment *in full*, substantially so, or at all, in the journal of the senate—the house of its origin—as required; the only notations therein contained being as to the title and number given the bill and a record of the vote on the measure, identified by number only.

A proposed constitutional amendment, dealing with the creation of a state tax commission, appears to have been entered at length in the house journal, but it is not possible from reading the senate journal to pronounce it the identical bill introduced and passed by the senate. The provisions requiring that it shall be entered in full in the respective journals of both houses of the legislative assembly are, as noted above, for the purpose of identification, and indicative of the care and caution with which proposed constitutional amendments are to be submitted. Slight errors in copying the bill in either journal, such as misspelled words, or even the omission of words not changing the substance, would not vitiate the submission of a proposed amendment, but the journal of each house must be sufficiently complete to identify the measure beyond all question of doubt as to its provisions when finally

submitted to the people. (*Nesbit* v. *People,* 19 Colo. 441, 36 Pac. 221.)

The decisions of this court heretofore rendered have been consistent in upholding these constitutional requirements, and there appears to be little justification or excuse for deviation therefrom in this instance. As was well said, in the case of *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, Ann. Cas. 1916B, 39, 142 Pac. 210: "No one would contend that two weeks' publication *substantially meets* the requirement for three months' publication; on the contrary, no one can seriously insist that *in every detail* the proceedings for publication * * * did not substantially comply with the requirements of section 9, Article XIX." (See, also, cases of *State ex rel. Woods* v. *Tooker,* 15 Mont. 8, 25 L. R. A. 560, 37 Pac. 840; *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582.)

However broad a definition of "substantial compliance" may be accepted, no one would seriously insist that entry of an amendment *in full* upon the house journal only substantially complies with the command that it must be entered *in full* in the journal of both the house and senate.

The correct rule applicable here is well stated in the *Alderson Case* as follows: "The proper proposal of the amendment by the legislature and the will of the people expressed at the polls in favor of such amendment are clearly emphasized as *the factors of paramount importance* in effecting a change of our Constitution. (*Constitutional Prohibitory Amendment Cases,* 24 Kan. 700.) Whatever may be said of the rigidity with which the rules of law must be drawn whenever either of these paramount factors is in issue, we are clearly of the opinion that any question which may arise upon other features of the amending process is referable to the rule of substantial compliance, even though the provision of the Constitution invoked is mandatory." In that case it is emphasized, and properly so, that the constitutional mandates shall be applied with "*rigidity*" respecting the factors of *paramount importance* affecting a change in the Constitution, namely, the proper

proposal and the vote of the people at the polls. In the case before us there was no proper proposal and therefore no amendment.

Mr. Justice Hunt, speaking for this court in the *Durfee Case*, well said: "An amendment to the Constitution, like the Constitution, obtains life by the direct power of the people. No other authority can be put above them, * * * in respect to effecting changes in their organic law. A legislative assembly may amend or enact statutes, and, within their province as representatives of the people, legislators are supreme in the exercise of a constitutional law-making power (*State* v. *Long*, 21 Mont. 26, 52 Pac. 644); but, in respect to the Constitution, they are by that instrument's terms *proposers* of amendments—machinists operating intermediate machinery, through means of which, as the people's agents, they may *propose* an amendment to their Constitution, but which the people have provided must eventually come directly before them in its molded form, to be adopted or rejected by their votes, and by them alone."

The recordation in full on the house journal alone does not, in my opinion, substantially meet the mandate that the proposed amendment *"shall be entered in full"* on the respective journals of the house and senate. The language of Mr. Justice De Witt, in the case of *State ex rel. Woods* v. *Tooker, supra*, puts forth in concrete form my views, in language so plain and clear that I venture to appropriate the same as follows: "We cannot but be of opinion with Judge Cooley, that we would be treading upon extremely dangerous ground were we to hold that a solemn constitutional provision was simply directory and nonessential when we face the express mandatory language of the provision, and also the additional and separate command of the Constitution that the provision is mandatory. The command of the Constitution is in no uncertain voice. We cannot misunderstand it. We cannot do other than render to it the obedience which our duty demands. It provides that an amendment may be adopted by certain methods. These methods were not employed. Another method was resorted to. That

method accomplished nothing. The amendment was not adopted.''

And further in the course of his opinion, speaking of the necessity of rigid enforcement of the mandate prescribing the method or proposing an amendment by the legislative assembly, he well said: ''If it is held that the command to the secretary of state to publish a ·proposed amendment for a certain period is nonessential, and may be disregarded, why may not the legislative department of the government follow the same practice, and disregard the requirement that the proposed amendment shall be voted for by two-thirds of the members elected to each house, or the requirement that the proposed amendment, with the ayes and noes of each house, shall be entered in full on their respective journals? If one requirement is nonessential, why is not another? And who is to say what is essential and what is not? And by what rules are such distinctions to be made? The Constitution does not itself make them. The framers of that instrument made no distinction in the requirements. They made them all mandatory; and, if a court commences to nullify their commands by construction, we do not know where the court would commence, or where it would end, or where it would draw the line which the Constitution says shall not be drawn.'':

The rule has stood and been generally recognized since its first announcement in the *Tooker Case*, nearly thirty years ago, and the language being so plain as not to admit of doubt it should be adhered to irrespective of any suggestions of expediency.

The power to propose amendments has been granted by the people to the legislature, while the power of the legislature to enact laws is inherent. The Constitution construes itself—its provisions are mandatory and prohibitory. The authority of the legislature to initiate any change in the existing organic law is a delegated power, to be strictly construed under the limitations by which it is conferred. The legislature, acting outside

of the Constitution, is without jurisdiction and its action a nullity.

It should not be forgotten that a comparatively short time ago this court, as now constituted, in the *Soldiers' Bonus Case* unanimously declared most vigorously for adherence to the Constitution in language as follows: "Be it in accord with the elementary principles of justice or opposed to more or less accepted notions * * * the Constitution must prevail." (*State ex rel. Mills* v. *Dixon,* 66 Mont. 76, 213 Pac. 227.)

Why one requirement of section 9, Article XIX, of the Constitution of the two made mandatory in the presentation of a proposed amendment should be considered by the majority as necessary to be complied with and not the other is difficult for me to understand, as they are indivisible. These requirements are that *proposed amendments* "*together* with the ayes and nays of each house thereon shall be entered *in full* on their respective journals." How it can be said that the mere entry, *viz.,* of the ayes and nays upon the journals of the respective houses, is sufficient, and that it is not necessary to enter the proposed amendment in full, certainly strains to the limit the language employed in this section of the Constitution.

I do not see the application of the maxim, *expressio unius est exclusio alterius,* to this case. It is not properly invoked in construction of the language of the Constitution. It is a rule of interpretation and not a constitutional command. It cannot be used as a means to control an express provision of the Constitution. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708, 186 Pac. 697.)

Reference to the allegation of defendants' answer does not add strength to the position taken by the majority. The affirmative defense that Senate Bill No. 11, passed and concurred in by the house of representatives, is the identical bill and in the exact language as introduced and passed by the senate is an issuable fact, the burden of proving which would fall upon the defendants. It is considered as admitted in this instance

merely for the purposes of decision of plaintiff's motion for judgment on the pleadings.

I voice timely warning of the grave dangers incident to carrying the rule of *substantial construction* of constitutional requirements to the extent recognized by the majority. Let the bars down in one instance as to a positive mandate respecting the method of amendment of our Constitution, and excuse will be offered and accepted in successive cases to meet supposed exigencies. The Constitution will eventually become no more stable in effect than ordinary legislation. If there is one provision more than another which in my judgment should be treated as mandatory, it is that permitting of constitutional amendments in manner otherwise than by constitutional convention. Mr. Chief Justice Day, speaking for the supreme court of Iowa, in a case involving the identical question here presented, used language to which I subscribe and here set forth in conclusion of that which I have to say respecting my position: "It has been said that changes in the Constitution may be introduced in disregard of its provisions; that, if the majority of the people desire a change, the majority must be respected, no matter how the change may be effected, and that the change, if revolution, is peaceful revolution. But the revolution is peaceful only upon the assumption that the party opposed surrenders its opposition and voluntarily acquiesces. If it objects to the change, then a question arises which can be determined only in one of two methods, by the arbitrament of the courts, or by the arbitrament of the sword. Disguise the question as we will, theorize about it as we may, this is the fact with which we are at last brought face to face, and wisdom dictates that its dreadful possibilities should be apprehended and appreciated. We fear that the advocates of this new doctrine, in a zeal to accomplish an end which a majority of the people desire, have looked at but one phase of the question, and have not fully considered the terrible consequences which would almost certainly follow a recognition of the doctrine for which they contend. It may

be that the incorporation of this amendment in the Constitution, even if the Constitution has to be broken to accomplish it, would not, of itself produce any serious results. But if it should be done by sanctioning the doctrine contended for, a precedent would be set which would plague the state for all future time. A Banquo's ghost would arise at our incantation which would not down at our bidding." (*Koehler & Lange* v. *Hill,* 60 Iowa, 603, 609, 5 N. W. 609, 612.

I should be recreant to my duty were I not to voice emphatic protest of the majority opinion.