STATE EX REL. WOODS ET AL., *v.* TOOKER, COUNTY CLERK.

[Submitted September 15, 1894. Decided September 24, 1894.]

CONSTITUTIONAL LAW—*Provisions for amendment mandatory.*—Section 19 of article IX of the constitution requiring that the secretary of state shall publish a proposed constitutional amendment for three months prior to the next general election is not only mandatory by its express terms, but is also mandatory by virtue of section 29 of article III declaring that the provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise, and a noncompliance with such requirement for publication renders the adoption of a proposed amendment nugatory.

SAME—*Amendment—County commissioners—Certificate of nomination—Mandamus to county clerk.*—The proposed amendment to section 4 of article XVI, of the constitution, providing for the election of county commissioners at the general election of 1894, not having been regularly adopted, and there being, therefore, no offices of commissioners to be filled at said election, *mandamus* will not lie to compel a county clerk to file a certificate of nomination for such office.

ORIGINAL PROCEEDING. Application for writ of mandate, to compel a county clerk to file certificates of nomination for the office of county commissioners, prior to general election of 1894. Writ denied.

Statement of the case by Mr. Justice DE WITT:

The relators ask a writ of *mandamus,* directed to the respondent, as county clerk and recorder of Lewis and Clarke county, requiring him, in pursuance to the ballot law (Acts

16th Legislature, Sess. Laws 1889, p. 135), to file in his office the certificate of the relators' nomination for the office of county commissioner of said county. The petitioners set forth that on September 4, 1894, an assemblage of delegates of the Republican party was duly held, and that at such assemblage the three relators were duly nominated for such office of county commissioner. The formal acts of making the certificate of nomination by the proper officers of the convention are set forth in the petition. It is then alleged that said certificate was duly presented to the respondent for filing, and that he refused, and still refuses, to file the same. The respondent's answer admits all the matter alleged in the petition, and gives his reason for refusing to file the certificate, based upon the following facts: The nominations for said office of county commissioner were for the purpose of electing persons to that office, under the provisions of an alleged amendment to the constitution; and that there is, in fact, no such amendment, and, there being no such amendment, there will be no vacancy in the office of county commissioner, in said county, to be filled at the ensuing election; and that, therefore, there is no duty enjoined by law upon the county clerk and recorder to file any certificate of nomination for such office by any political party.

The question presented to this court is whether the constitutional amendment proposed by the legislative assembly by act approved February 23, 1891, and voted upon by the electors at the general election in November, 1892, became and now is a part of the constitution. The facts in relation to the alleged adoption of the proposed amendment are as follows: The state constitution, adopted October 1, 1889, contains the following: "In each county there shall be elected three county commissioners, whose term of office shall be four years. A vacancy in the board of county commissioners shall be filled by appointment by the district judge of the district in which the vacancy occurs." (Const., art. XVI, § 4.) The act of the legislative assembly referred to, approved February 23, 1891, provides as follows: "SECTION 1. There shall be submitted to the qualified electors of the state, at the next general election, the following amendment to the state constitution: Section 4,

article XVI, shall be amended so as to read as follows: SEC. 4. In each county there shall be elected three county commissioners, whose term of office shall be four years; *provided*, that the term of office of those elected to succeed those elected October 1, 1889, shall expire on the first Monday in January, 1895; *and, provided further*, that at the general election to be held in November, 1894, one commissioner shall be elected for a term of two years, and two commissioners for a term of four years. A vacancy in the board of county commissioners shall be filled by appointment by the district judge of the district in which the vacancy occurs."

The constitution provides as to amendments of that instrument as follows: "Amendments to this constitution may be proposed in either house of the legislative assembly; and if the same shall be voted for by two-thirds of the members elected to each house, such proposed amendment, together with the ayes and nays of each house thereon, shall be entered in full on their respective journals; and the secretary of state shall cause the said amendment or amendments to be published in full in at least one newspaper in each county (if such there be) for three months previous to the next general election for members to the legislative assembly; and at said election the said amendment or amendments shall be submitted to the qualified electors of the state for their approval or rejection, and such as are approved by a majority of those voting thereon shall become part of the constitution. Should more amendments than one be submitted at the same election they shall be so prepared, and distinguished by numbers, or otherwise, that each can be voted upon separately; *provided, however*, that not more than three amendments to this constitution shall be submitted at the same election." (Const., art. 19, § 9.)

The fact as to the publication of the amendment proposed by the act of February 23, 1891, is that it was published by the secretary of state in the newspapers as required, but for two weeks before the election of 1892 only, and for no longer period. The question now presented is, whether the publication of the proposed amendment for only two weeks caused the attempt to adopt the amendment to be wholly a failure.

*Alex C. Botkin,* for Relators.

*County Attorney C. B. Nolan,* for Respondent.

DE WITT, J.—Counsel for relators has presented to us the general rules as to when statutes should be construed to be mandatory and when directory, and has argued, upon their analogies, that the provision of our constitution which requires a proposed amendment to that instrument to be published for three months is directory only, and that a disregard of the provision is not fatal to the adoption of the amendment. The reports are full of decisions which have applied these principles as to the construction of certain provisions of statutes, but we need not enter upon an elaborate examination of these principles, for we believe that in considering the provisions of the constitution for amending that instrument we are entering upon a somewhat different field.

We cannot better introduce this consideration than by quoting from Judge Cooley, whose language we find cited, and his doctrine largely followed, by the courts which have treated the subject of the construction of constitutional provisions. Judge Cooley says: "But the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe. mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims and fix those unvarying rules by which all departments of the government must at all times shape their conduct; and, if it descends to prescribing mere rules of order in unessential matters, it is lowering the proper dignity of such an instrument, and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance and worthy to be embraced in an instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by

which is to be measured the power which can be exercised, as well by the delegate, as by the sovereign people themselves.    If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument when we infer that such directions are given to any other end.    Especially when, as has been already said, it is but fair to presume that the people in their constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication.    There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions; but they are so plainly at variance with the weight of authority upon the precise points considered, that we feel warranted in saying that the judicial decisions, as they now stand, do not sanction the application." (Cooley's Constitutional Limitations, 4th ed., 94, 95.) "And we concur fully in what was said by Mr. Justice Emmot, in speaking of this very provision, that 'it will be found, upon full consideration, to be difficult to treat any constitutional provision as merely directory, and not imperative.'" (Page 99.)

At another place in the same work this distinguished authority on constitutional law says: "But the will of the people to this end [that is, amending a constitution] can only be expressed in the legitimate modes by which such a body politic can act, and which must either be prescribed by the constitution whose revision or amendment is sought; or by an act of the legislative department of the state, which alone would be authorized to speak for the people upon this subject, and to point out a mode for the expression of their will in the absence of any provision for amendment or revision contained in the constitution itself." (§ 30, page 39.)

In another place in the same work we find the following language: " The fact is this: that whatever constitutional provision can be looked upon as directory merely is very likely to be treated by the legislature as if it was devoid even of moral

obligation, and to be, therefore, habitually disregarded. To say that a provision is directory seems, with many persons, to be equivalent to saying that it is not law at all. That this ought not to be so must be conceded; that it is so we have abundant reason and good authority for saying. If, therefore, a constitutional provision is to be enforced at all it must be treated as mandatory. And, if the legislature habitually disregard it, it seems to us that there is all the more urgent necessity that the courts should enforce it. And it also seems to us that there are few evils which can be inflicted by a strict adherence to the law so great as that which is done by an habitual disregard, by any department of the government, of a plain requirement of that instrument from which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed." (§ 150, page 183.)

The court of appeals of Texas, in construing a constitutional provision, uses the following language: "In considering the subject we think it necessary to first determine whether, in the construction of the organic law, we may, as we might in the construction of a statute, apply the distinction between directory and mandatory provisions, or whether we must construe all provisions of the organic law to be mandatory." (*Hunt* v. *State*, 22 Tex. App. 397.) The opinion of that court then refers to cases which have held constitutional provisions to be directory, and continues in the following language: "But, notwithstanding these decisions are by able courts, the great weight of authority seems to be the other way, holding that the courts nor any other department of the government are at liberty to regard any provision of the constitution as merely directory, but that each and every of its provisions must be treated as imperative and mandatory, without reference to the rules distinguishing between directory and mandatory statutes." (*Hunt* v. *State*, 22 Tex. App. 398.) The opinion then cites Judge Cooley as we have quoted him above, and continues: "In our own state we know of no instance in which a constitutional provision has been held to be directory merely. This court has more than once held that constitutional provisions are always mandatory, and has adopted the doctrine laid down by Judge Cooley, which we have quoted above. (*Cox* v. *State*,

8 Tex. App. 254; 34 Am. Rep. 746; *Holley* v. *State,* 14 Tex.
App. 505.) We believe this to be the sound and only safe
doctrine. It seems to us that the rule which gives to the
courts and other departments of the government a discretion-
ary power to treat a constitutional provision as directory, and
to obey it or not, at their pleasure, is fraught with great danger
to the government. We can conceive of no greater danger to
constitutional government, and to the rights and liberties of
the people, than the doctrine which permits a loose, latitudi-
nous, discretionary construction of the organic law. 'We are
taught by the constitution itself that those who administer this
government are divided into three co-ordinate departments;
each of these can only act within its own limited sphere, and
they, respectively, are the servants of the sovereign power, the
people. There is no power above the people. There is no
discretionary power granted in the constitution for either of
these departments, nor for all of them united, to exercise a
discretionary expansion and flexible power against its rigid
limitations, even though such limitations were imposed by
improvident jealousy. If abuse exists by reason of defects
in the constitution, present or prospective, the true source of
authority, the people, have the power, and doubtless the wisdom
and patriotism, to correct them; and this, in the American
idea, is the safe and only depository.' (Potter's Dwarris on Stat-
utes, 665.) . . . . Upon the weight of authority, and, to our
minds, upon the soundest of reasons, we conclude that the pro-
vision of the constitution under consideration, and all other
provisions of our constitution, are mandatory, and can in no
case be regarded as directory merely, to be obeyed or not,
within the discretion of either or all of the departments united
of the government." (*Hunt* v. *State,* 22 Tex. App. 399, 400.
See, also, Opinion of the Justices, 6 Cush. 573.)

It would seem that the framers of our constitution had in
mind the views of Judge Cooley, for they did not leave the
language of the constitution open to the construction of courts,
but set the matter at rest by the following provision: "The
provisions of this constitution are mandatory and prohibitory,
unless by express words they are declared to be otherwise."
(Const., art. III, § 29.) The court is therefore relieved from

much responsibility in the construction of the organic law. The question is not before us whether the requirement of the constitution that notice of a proposed amendment shall be published for three months is mandatory or directory. The constitution construes itself in this regard, and, as remarked in the opening of this opinion, we seem to be in a somewhat different field than that suggested by relators' counsel as to the construction of statutes.

It being settled that the provision under consideration is mandatory the inquiry remaining seems to be, What is the consequence of disobedience to the mandate of the constitution? Is the proposed adoption of the amendment nullified, or is the disobedience of the constitution to be treated as simply an omission by the secretary of state? A constitution differs from a statute, in that a statute must provide the details of the subject of which it treats; whereas a constitution states general principles, and builds the substantial foundation and general framework of the law and government. It is true that it is a subject of general remark that the modern tendency of constitution makers is to somewhat depart from this practice; but the distinction between a statute and a constitution, as above suggested, certainly remains, and it is still true that constitutions do not generally descend into details. But when we find this practice departed from, and we observe a constitution going into details, such action is significant.

Again, referring to the eminent constitutional authority above quoted, we repeat: "It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules by which all departments of the government must at all times shape their conduct; and if it descends to prescribing mere rules of order in unessential matters it is lowering the proper dignity of such an instrument, and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in an instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be

exercised, as well by the delegate, as by the sovereign people themselves. If directions are given respecting the times or modes of proceeding in which a power should be exercised there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument when we infer that such directions are given to any other end." (Cooley's Constitutional Limitations, 4th ed., 94, 95.) Thus Judge Cooley holds that if we find in a constitution that which some may undertake to argue should be held to be unessential, it was not intended to be unessential by the people in enacting the provision. (See, also, *Oakland Paving Co.* v. *Hilton,* 69 Cal. 510; citing *Koehler* v. *Hill,* 60 Iowa, 554; citing Cooley as above.)

The Kansas supreme court, in a case before it, said: "The two important vital elements in any constitutional amendment are the assent of two-thirds of the legislature and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because by them certainty as to the essentials is secured; but they are not themselves the essentials." (*Prohibitory Amendment cases,* 24 Kan. 700.)

In reviewing this Kansas case the supreme court of California uses the following language: "That the elements mentioned by the learned justice are important and vital cannot be doubted, but that they are the only important and vital elements cannot be conceded. The learned court here assumes, without any reason, that entering on the journals is not vital and important. The convention which framed the constitution of Kansas, and the people who adopted it and made it their paramount law, thought otherwise. This is plainly apparent from their inserting other elements in their constitution. It would be a rash assertion, and one which no sound principle of constitutional law sustains that the words, 'such proposed amendments . . . . shall be entered on the journal' were inserted in the constitution of Kansas to be observed or not, as the legislature or any other department of the government of that state should think proper. If this is form and machinery it is form and machinery established by the constitution. It

is not unsubstantial and nonessential, but a part of the instrument, which all officers are sworn to support, as much as any
other portion of the constitution; for when an oath is taken to
support the constitution it embraces the whole instrument.
These provisions may not be disregarded, for the reason, says
the court, that by them certainty as to essentials is secured.
We can conceive of no stronger reason why they should be
regarded by legislators and courts.   The constitution makers
inserted them for that reason.   They, in effect, ordain and
declare that no other mode or form of machinery is permissible to secure certainty in doing the act permitted.   Declaring that those requirements are nonessential is, in effect, saying
that the convention which framed the constitution, and the
electors which ratified their action, spent their time in framing
and inserting in their organic and paramount law nonessential
and unimportant provisions." (*Oakland Paving Co.* v. *Hilton,*
69 Cal. 499, 500.)

We also find the following language used by the supreme
court of Alabama: "We entertain no doubt that to change the
constitution in any other mode than by a convention, every
requisition which is demanded by the instrument itself must
be observed, and the omission of any one is fatal to the amendment.   We scarcely deem any argument necessary to enforce
this proposition.   The constitution is the supreme and paramount law.   The mode by which amendments are to be made
under it is clearly defined.   It has been said that certain acts
are to be done, certain requisitions are to be observed, before a
change can be effected.   But to what purpose are these acts
required, or these requisitions enjoined, if the legislature or
any other department of the government can dispense with
them?   To do so would be to violate the instrument which
they are sworn to support, and every principle of public law
and sound constitutional policy requires the courts to pronounce against every amendment which is shown not to have
been made in accordance with the rules prescribed by the
fundamental law." (*Collier* v. *Frierson,* 24 Ala. 109.)

In considering the provisions of our own constitution, and
in the light of the decisions, we are clearly of the opinion that
the requirement to publish notices of a proposed amendment

for three months is not only mandatory, but that it is an essential provision, and that it must be obeyed.    We may add further that it seems to us to be a prudent and expedient provision. This requirement of the constitution provides a method for amending that instrument.    It is also provided that the constitution may be amended, or a new one compiled, by a convention.    (Const., art. XIX, § 8.)    This method, of course, is not now under consideration.    But it may be said with us as it was said in Pennsylvania: There are only three methods by which a constitution may be changed: 1. The method by amendment, as provided in article XIX, section 9; 2. By convention, as provided by article XIX, section 8; and 3. By revolution.    (*Wells* v. *Bain,* 75 Pa. St. 39; 15 Am. Rep. 563.)    The first method was attempted.    But that method was not followed as prescribed.    Instead, another method was followed; that is, a method identical with that provided in article XIX, section 9, except that the advertisement was for two weeks only, and not for three months.    As remarked in California, the constitution framers ordain and declare that no other form or mode or machinery is permissible to secure certainty in doing the act permitted.    It is also held in the Alabama case above cited that an amendment cannot be made by a method other than that provided.    We therefore have this situation: The method for amendment is provided by the solemnity of the constitutional enactment, and another method of amendment has been attempted to be invoked.    We can see no other result but that such attempt is nugatory, and of absolutely no avail.

The California supreme court, in construing the provision that all of the constitution of that state should be mandatory and prohibitory, said: " We will add here that under our constitution no question can be made whether the provision in it for its amendment is mandatory or directory.    That question is settled by the constitution itself, which ordains in the most solemn form and manner that each and all of its provisions are mandatory and prohibitory, unless by express words declared to be otherwise.    (Art. I, § 22.)    This section, in our judgment, not only commands that its provisions shall be obeyed, but that the disobedience of them is prohibited."

(*Oakland Paving Co.* v. *Hilton,* 69 Cal. 512.)   The Alabama case is also to the same effect—that, if a method other than that provided is adopted, the attempt is nugatory.   We also find it said in Endlich on Interpretation of Statutes, section 433, as follows: "It may, perhaps, be found generally correct to say that nullification is the natural and usual consequence of disobedience, and that, where an act requires a thing to be done in a particular manner, that manner alone must be adopted."

If it is held that the command to the secretary of state to publish a proposed amendment for a certain period is nonessential, and may be disregarded, why may not the legislative department of the government follow the same practice, and disregard the requirement that the proposed amendment shall be voted for by two-thirds of the members elected to each house, or the requirement that the proposed amendment, with the ayes and noes of each house, shall be entered in full on their respective journals?   If one requirement is nonessential, why is not another?   And who is to say what is essential and what is not?   And by what rules are such distinctions to be made?   The constitution does not itself make them.   The framers of that instrument made no distinction in the requirements.   They made them all mandatory; and, if a court commences to nullify their commands by construction, we do not know where the court would commence, or where it would end, or where it would draw the line which the constitution says shall not be drawn.

We have felt wholly satisfied that the omission to publish the proposed amendment, as required by the constitution, is fatal to its adoption; but we have considered the question at perhaps some length, and have quoted from the authorities with much liberality, because this is the first time that such a question of construction has been before us.   We cannot but be of opinion, with Judge Cooley, that we would be treading upon extremely dangerous ground were we to hold that a solemn constitutional provision was simply directory and nonessential when we face the express mandatory language of the provision, and also the additional and separate command of the constitution that the provision is mandatory.   The command

of the constitution is in no uncertain voice. We cannot misunderstand it. We cannot do other than render to it the obedience which our duty demands. It provides that an amendment may be adopted by certain methods. These methods were not employed. Another method was resorted to. That method accomplished nothing. The amendment was not adopted.

There being no amendment to the constitution there are no offices of county commissioners in Lewis and Clarke county to be filled at the election to be held in November, 1894, and there is therefore no duty enjoined by law upon the county clerk and recorder of that county to file any alleged certificates of nomination for such offices. The writ of *mandamus* is therefore dismissed.

PEMBERTON, C. J., and HARWOOD, J., concur.