TIPTON, PLAINTIFF, v. MITCHELL, SECRETARY OF STATE, DEFENDANT.

(No. 7,321.)

(Submitted June 30, 1934. Decided July 14, 1934.)

[35 Pac. (2d) 110.]

*Mr. Albert J. Galen* and *Mr. Paul Keller,* for Plaintiff, submitted an original and a supplemental brief; *Mr. Galen* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, submitted a brief; *Mr. Nagle* argued the cause orally.

### Opinion: PER CURIAM.

The plaintiff, a voter and taxpayer of Lewis and Clark county, asks this court for a writ of injunction restraining the Secretary of State from publishing notice that a constitutional amendment will be submitted to the qualified electors at the next regular election, for the reason, as the plaintiff alleged in his complaint before amendment, that the proposal is void because it has never been entered in full, or otherwise, or at all, on the House journal of the regular session of the Twenty-Second Legislative Assembly, in which it originated, as required by section 9 of Article XIX of the Constitution of this state. This section provides that: "Amendments to this

constitution may be proposed in either house of the legislative assembly, and if the same shall be voted for by two-thirds of the members elected to each house, such proposed amendments, together with the ayes and nays of each house thereon, shall be entered in full on their respective journals; and the secretary of state shall cause the said amendment or amendments to be published in full in at least one newspaper in each county (if such there be) for three months previous to the next general election for members to the legislative assembly; and at said election the said amendment or amendments shall be submitted to the qualified electors of the state for their approval or rejection and such as are approved by a majority of those voting thereon shall become part of the constitution.''

It appears from the complaint that the proposal was introduced in the Senate as S. B. 30, regularly passed that body by the required vote, and was transmitted to the House of Representatives, where it was likewise passed by a two-thirds vote. It was entered in full on the Senate journal, but not upon the House journal. In due time it reached Governor Erickson, who approved it. Whether any action on his part was necessary is not questioned here. The bill reached the Secretary of State in due course, and thus the matter stood when the regular session adjourned. The bill was published as Chapter 52 of the Session Laws of 1933, at page 90, and reads as follows:

''An Act to Provide for the Submission to the Qualified Electors of the State of Montana of an Amendment to Article V of the Constitution of the State of Montana, by Adding Thereto a Section to be Known as Section 46, Providing for a State Budget and the Manner in Which Appropriations Shall be Made by the Legislative Assembly.

· ''Be it enacted by the Legislative Assembly of the State of Montana:

''Section 1. That Article V of the Constitution of the State ·of Montana be amended as hereinafter provided, and that the question of such amendment be submitted to the qualified

electors of the State of Montana at the general election to be held in November, 1934.

"Section 2. That Article V of the Constitution of the State of Montana be, and the same is hereby amended, by adding thereto a section to be designated and known as Section 46 and to read as follows:

"Section 46. Within fifteen days after the convening of the Legislative Assembly in regular session the Governor shall submit a budget for the two ensuing fiscal years. Such budget shall contain a complete plan of proposed expenditures and estimated revenues for the ensuing biennium. It shall show in detail the revenues and expenditures for each of the two fiscal years preceding; the current assets, liabilities, reserves and surplus or deficit of the state; the debts and funds of the state; an estimate of the revenues which will accrue to each fund of the state during each year of the ensuing biennium, and an estimate of the state's financial condition as of the beginning and end of such biennium; any explanation or statement the Governor may desire to make as to the important features of the budget, and any suggestions or recommendations as to methods for the reduction or increase of the state revenues.

"The budget shall embrace an itemized estimate of the appropriations to be made for the Legislative Assembly, which shall be certified to the Governor by the President of the Senate and Speaker of the House within five days after the convening of the Legislative Assembly; for the executive department; for the judicial department; to pay and discharge the principal and interest of the public debt; for salaries payable by the state under the Constitution and Laws of the state; for the maintenance, support and betterment of all state institutions, and for such other purposes as are set forth in the Constitution and Laws of the state, and for all other appropriations.

"The Governor shall deliver to the Presiding Officer of each House the budget and appropriation bill for all of the proposed appropriations of the budget, clearly itemized and

classified, and the Presiding Officer of each House shall promptly cause said bill to be introduced therein, but such bill need be printed only in the House of Representatives. The Governor may, before final action thereon by the Legislative Assembly, amend or supplement the budget to correct an oversight or error, or in case of an emergency, by delivering such amendment to the Presiding Officers of both Houses and such amendment or supplement shall thereby become a part of the budget and budget bill as an addition to the items therein or as a modification of or substitute for any item or items in said budget and bill such amendment or supplement may affect. The Legislative Assembly may not alter said bill except to strike out or reduce items therein; provided, however, appropriations necessary for the payment of interest or principal of the public debt shall not be reduced or eliminated; and provided, further, that the salary or compensation of any public officer shall not be increased or decreased during his term of office.

"Neither House shall consider any other appropriation, except an appropriation for the immediate expense of the Legislative Assembly, until the budget appropriation bill has been finally acted upon by both Houses. Every appropriation in addition to those provided for in the budget and budget appropriation bill, shall be embodied in a separate bill, which shall be designated as a supplementary appropriation bill, and shall be limited to some single work, object or purpose therein stated. No supplementary appropriation shall be valid if the balance of estimated revenues to accrue during the biennium to the fund out of which the supplementary appropriation is to be paid, after setting aside so much thereof as will be required to meet the appropriations made therefrom by the budget and budget appropriation bill, is insufficient to meet such supplementary appropriation, unless the Legislative Assembly shall provide in such supplementary appropriation bill the necessary revenue to meet and pay such appropriation by a tax, direct or indirect, to be levied and collected as directed by the Legislative Assembly. This prohibition shall

not apply to appropriations to suppress insurrections, defend the state or assist in defending the United States in time of war.

"The Governor, for the purpose of making up said budgets shall have the power, and it shall be his duty to require from all state officers, including all heads of executive and administrative departments, and institutions, bureaus, boards, commissions and agencies expending or supervising the expenditure of state moneys, and all institutions and individuals apply [applying?] for state moneys and appropriations, such itemized estimates and other information as he may deem necessary and proper, in such form and at such times as he may direct.

"The Governor may provide for hearings on all estimates and may require the attendance at such hearings of representatives of state departments, offices and institutions, and of other institutions and individuals applying for state appropriations.

"The Governor may, in his discretion, revise, change or alter any and all estimates, except those relating to the Legislative department as certified by the Presiding Officers of both Houses, those providing for payment of the principal and interest of the state debt, and for salaries and expenditures specified by the Constitution or Laws of the state.

"The total appropriations made and expenditures authorized by the budget and budget appropriation bill from any fund must not exceed the estimated revenues from taxes, fees and all other sources which will accrue to such fund during the biennium covered by such budget and budget appropriation bill, and any and all appropriations or expenditures authorized by the budget and budget bill in excess of the estimated revenues which will accrue to the fund, from which such appropriations or expenditures are to be made, during such biennium, shall be wholly void.

"No expenditures shall be made or authorized by any officer, bureau, board, commission, institution, agency or individual,

or by the head of any state department or institution, for any purpose during any fiscal year covered by the budget and budget appropriation bill in excess of the amount appropriated for such purpose by the budget appropriation bill.

"Section 3. That separate official ballots shall be provided at the general election to be held in November, 1934, which shall have printed thereon the words: 'For the Amendment to the Constitution providing for a State Budget and the manner in which appropriations shall be made by the Legislative Assembly,' and the words, 'Against the Amendment to the Constitution providing for a State Budget and the manner in which appropriations shall be made by the Legislative Assembly,' and the elector shall indicate his preference by marking an 'X' before the proposition for which he desires to vote, and the result of the vote on said question shall be determined and declared as provided by law.

"Section 4. All Acts and parts of Acts in conflict herewith are hereby repealed."

Governor Cooney called the Twenty-Third Legislative Assembly into extraordinary session on November 27, 1933. Without passing upon the necessity of action on the part of the Governor in such case (the authorities being in conflict), nothing was said by him in his proclamation convening the Legislative Assembly, nor in any of his messages to it while it continued in extraordinary session, concerning the proposed constitutional amendment. During the extraordinary session, however, the House of Representatives assumed to amend the House journal of the regular session of the Twenty-Third Legislative Assembly by passing certain motions and resolutions. Two of the representatives moved that the House journal of the regular session of the Twenty-Third Legislative Assembly be corrected and amended by inserting in a proper place in the House journal the following: "S. B. 30, being a constitutional amendment, and having been read three several times, was passed by the necessary two-thirds vote of the entire membership of the House as required by section 9 of Article XIX of the state Constitution, and in compliance

with the provisions thereof the bill is set forth in its entirety as follows: (The text of S. B. 30 follows in full).''

Whether the House in extraordinary session had the authority ██ to amend and correct the journal of its regular session, in a matter so important as that relating to a proposal for a constitutional amendment, is not necessary for determination now, for the House journal of the regular session has never been corrected or amended in accordance with the action, or attempted action, of the extraordinary session. It still remains as it was when the regular session adjourned.

Plaintiff alleges that the Secretary of State has no power or authority to cause the amendment to be published, nor to do any act whatever for the submission of the proposed amendment to the vote of the qualified electors, and that it will cost the state of Montana not less than $5,000 to attempt to comply with the constitutional provision governing the publication of a proposed constitutional amendment, all of which money will be wasted.

Upon the showing made, we issued a summons and order to show cause directed to Honorable Sam W. Mitchell, as Secretary of State of Montana; he answered the complaint, being represented by the Attorney General. The answer admitted the failure of the Legislative Assembly to have the proposed amendment entered upon the House journal at its regular session, but denied that for that reason or otherwise the proposed amendment is in violation of the mandate of section 9, Article XIX, of the Constitution; alleging that each and every other requirement of that section, including a two-thirds vote of the members elected to each House in favor of the proposal, the entering of the ayes and nays of each House thereon on their respective journals, and the entry of the proposed amendment in full on the journal of the Senate, was fully met and complied with in every particular by the House and Senate; that except for the failure to enter the proposed amendment in full in the journal of the House, everything was done which should have been done, and that

by reason thereof there was a substantial compliance with the constitutional provision.

This part of the case has been fully briefed and argued. Immediately after the submission of the cause, pursuant to stipulation of counsel (who were and are desirous of having the cause submitted upon the merits), the plaintiff obtained leave to add to the complaint a paragraph, to be numbered 11–A, following line 20 on page 10 of the complaint, which reads as follows: "That the constitutional amendment proposed by Chapter 52 of the Laws of 1933, is unconstitutional and void, being an attempted encroachment upon the legislative prerogative, contrary to the express limitation of section 1 of Article IV of our Constitution; that as indicated by the title of the Act, the amendment is proposed to be made of Article V of the Constitution by adding a new section thereto, and that Article deals in its entirety with the legislative department of the state government rather than the powers and duties of the Governor, and the proposed amendment relates in its entirety to the powers of the chief executive of the state which are to be found in Article VII of the Constitution; therefore it is without place as an amendment of Article V. That were it possible to uphold the Act upon any theory, the judicial department should not permit confusion in the distribution of the powers of the legislative, executive and judicial departments of the state; that if the amendment has any place whatsoever in the Constitution, it should with propriety be attached and made a part of Article VII, rather than Article V. That upon reference to the body of the Act, providing for such proposed amendment, it will be found that attempt is made to clothe the Governor with legislative authority and to thus interfere with the exclusive prerogative of the legislative department." This new paragraph, by stipulation of counsel, is deemed denied.

1. Is the requirement of the Constitution that "such proposed amendments, together with the ayes and nays of each house thereon, shall be entered in full on their respective journals," mandatory? Assuredly yes. Section 29 of Article

III declares: "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." And this court in *State ex rel. Woods* v. *Tooker,* 15 Mont. 8, 37 Pac. 840, 844, 25 L. R. A. 560, declared that section 9 of Article XIX, supra, requiring the Secretary of State to publish a proposed constitutional amendment for three months prior to the next general election, is not only mandatory by its express terms, but it was also mandatory by virtue of section 29 of Article III. In his powerful opinion, Mr. Justice De Witt, after reviewing the authorities, said: "We have felt wholly satisfied that the omission to publish the proposed amendment, as required by the constitution, is fatal to its adoption; but we have considered the question at perhaps some length, and have quoted from the authorities with much liberality, because this is the first time that such a question of construction has been before us. We cannot but be of opinion, with Judge Cooley, that we would be treading upon extremely dangerous ground were we to hold that a solemn constitutional provision was simply directory and nonessential when we face the express mandatory language of the provision, and also the additional and separate command of the constitution that the provision is mandatory. The command of the constitution is in no uncertain voice. We cannot misunderstand it. We cannot do other than render to it the obedience which our duty demands."

In *Durfee* v. *Harper,* 22 Mont. 354, 56 Pac. 582, 585, it appeared that the proposed amendment to the Constitution had not been entered in full on the respective journals of the two Houses of the Assembly, as required by section 9 of Article XIX of the Constitution. After a careful examination of all of the authorities in point, the court declared that the amendment was null and void. The learned Justice Hunt, who wrote the opinion, said: "An amendment to the constitution, like the constitution, obtains life by the direct power of the people. No other authority can be put above them, or act for them, in respect to effecting changes in their organic

law." It was pointed out that while the legislators are supreme in the exercise of the constitutional law-making power, in respect to the Constitution they are by that instrument's terms proposers only of amendments. "The legislative assembly can no more subtract from the various steps specified in the Organic Act to be taken by itself antecedent to submitting amendments to the constitution, than can it amend the constitution without such submission to the people." The court declared that in expounding the supreme law it was compelled to decide the proposed amendment never was proposed as required, and therefore never ought to have been submitted. "It was a nullity before it reached the people, and was not animated by them, because their own solemn commands empowering its proposal, and specifying the mode thereof, had been entirely ignored by the proponent."

This court, in *State ex rel. Hay* v. *Alderson,* 49 Mont. 387, 142 Pac. 210, 217, Ann. Cas. 1916B, 39, had under consideration the question of the sufficiency of a publication of a proposed amendment. It was there held, after a well-reasoned discussion, that the provision of section 9, Article XIX, respecting publication of the proposed amendment thereto, has to do with one of the features of the amending process which is referable to the rule of substantial, rather than literal, compliance, even though under section 29, Article III, the provisions of that instrument are declared to be mandatory and prohibitory, and that under the rule that every reasonable intendment will be indulged in favor of the constitutional amendment *after its ratification by the people at the polls.* The attack upon the amendment, which was adopted by a vote of 5.5 to 1 eight years before, was based on the ground, *inter alia,* that the Secretary of State had failed literally to comply with the constitutional requirement touching the publication. But the court made this significant statement: "If these attacks had been made upon the proceedings prior to the election of 1906, doubtless they would have prevailed. (*Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542.)"

A question very like that here came before us in the *Tax Commission Case* (*Martien* v. *Porter*), 68 Mont. 450, 219 Pac. 817, 826. The case was ably argued and was decided after prolonged study and many debates between the members of the court. Finally the majority, Mr. Justice Cooper and Mr. Justice Galen dissenting in separate opinions, held that in view of the condition presented by the record there had been a substantial compliance with the provision of section 9 of Article XIX, requiring the proposed amendment to be entered in full on the journals of the respective Houses. The record showed "that the bill acted upon in both houses was in identically the same language, identifying reference to it having been made in the Senate journal *and as passed was published by the Secretary of State and ratified by the people.*"

All the members of the court as now constituted are not satisfied with the majority opinion in the *Tax Commission Case.* Did not the court say in *Durfee* v. *Harper,* supra: "Thus, the proposition comes back to the statement that from the people, as a source, alone flows the delegated power of the legislature to even *propose* amendments to those 'unvarying rules' by which 'alike the government and the governed' are controlled, and where those rules adopted by the people are part of their constitution, and lay down how this power may be exercised by the legislature, there is no discretion in that body to ignore the commands of the fundamental authority, or override its limitations in great or small matters; and this principle holds good, not only for the legislative, but, so far as applicable, for the judicial and executive, departments of the government as well"? Is it possible, where a Constitution is involved, to declare a provision mandatory at one time and the same provision directory at another?

In the *Tax Commission Case* the rule announced in *State ex rel. Hay* v. *Alderson,* supra, was pointed out. In the opinion of Mr. Justice Galen in that case, he said correctly: "All agree that, had an application been made to this court for an injunction in advance of the election at which the

constitutional amendment was submitted, an injunction would unhesitatingly have issued.''

The voice of this court from the beginning of statehood to ▮ this day is unanimously to the effect that unless the requirements of section 9 of Article XIX, in submitting a constitutional amendment to the people, are followed without substantial deviation, nothing important being omitted, then, if the attack upon the proposal comes before the election, the proposal must fail.

2. The second point is difficult and of great importance. ▮ We are asked to examine the title of the Act, and to say what it indicated to the members of the Senate and the Representatives who voted upon it as being comprehended within its compass; and what will the ordinary voter suppose from reading it? Upon its face it is designated to amend Article V, which deals with the legislative department, its powers, duties and limitations, consisting in all of 45 sections. It is proposed to add thereto a section to be known as section 46, providing for a state budget and the manner in which appropriations shall be made by the Legislative Assembly. Counsel argue that the title does not correctly reflect the purpose of the proposal, but, on the contrary, is misleading and deceptive. It is urged that the proposed amendment, when carried out to the full, will amend a number of constitutional provisions contained in other Articles, and seriously impair, if not destroy, the system of checks and balances which has made the American plan of government the most successful, especially as it affects the welfare of the common man, in all history.

The historic provision which lies at the base of a Republican form of government, that is to say, of a representative democracy, is declared in section 1, Article IV, of the Constitution: ''The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to

either of the others, except as in this constitution expressly directed or permitted."

Under the Constitution as it now exists, the Governor has but a limited legislative power (that of the veto) which is restricted by the provisions of the Constitution. (*The Veto Case*, 69 Mont. 325, 222 Pac. 428, 35 A. L. R. 592.) This, it is argued, will be changed radically if the proposal succeeds, for it is couched in terms which largely increase the powers of the Governor, granting to him with respect to many appropriations for the state government will-nigh autocratic power, and diminishing the powers of the legislature nearly to the point of destruction in very important particulars; it is declared that, this amendment having been adopted, it would be within the power of the Governor to starve one department of the government into impotency, and increase the power of another to virtual autocracy. A fundamental lesson of history teaches that the governmental hand which controls the purse controls the government, and, consequently, the liberty of the people. "A power over a man's support is a power over his will."

It is likewise argued that the proposed amendment, affecting so many different provisions of the Constitution, as it necessarily would, might substantially change the character of our state government, and thus be contrary to the provision of the Constitution of the United States which guarantees to every state in the Union a Republican form of government. (United States Constitution, Art. IV, sec. 4.)

This cause might well have been presented to the court many weeks ago, giving us ample time to consider and decide the matter. The proceeding was commenced when we were laboring at top speed upon other problems; some, public matters of high importance which the public interest demands be decided speedily. We should be unmindful of our duty if we were to hazard a decision upon the question which is now presented to us, without prolonged study (for which we have not now the time), and the aid of applicable authorities (if such may be found). Inasmuch as the prior decisions of this

court with unanimous voice determine this case in favor of the plaintiff, the defects in the proposal being raised before election, we shall refrain from passing upon the most difficult point as being in this case unnecessary for decision.

Let the injunction as prayed for be issued forthwith.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.