STATE OF MONTANA ex rel. NEIL C. LIVINGSTONE, JR., Relator, v. FRANK MURRAY, as the Secretary of State of the State of Montana, Respondent.

No. 10165.
Submitted June 6, 1960. Decided July 21, 1960.
354 P.2d 552.

558

John H. Risken, A. W. Scribner, Helena, argued orally for relator.

Wm. F. Crowley, Helena, argued orally for respondent.

MR. JUSTICE BOTTOMLY delivered the Opinion of the Court.

This is an original proceeding for writ of injunction. The relator, a voter and taxpayer of Lewis and Clark County, Montana, filed herein his petition and application to this court asking for a temporary restraining order, restraining the Secretary of State from expending public funds and from incurring state indebtedness in publishing or causing to be published any proposed amendments to the Constitution of the State of Montana, that are proposed, set forth and contained in Chapter 191, Montana's Thirty-Sixth Legislative Assembly, Session Laws of 1959, originating as Senate Bill No. 7, and passed by the votes of both the Senate and the House of Representatives by a two-thirds vote.

After the ex parte hearing on relator's application, this court issued its temporary restraining order and injunction on June 6, 1960, and in said order directed that the Secretary of State of the State of Montana, respondent, appear on June 16, 1960, and show cause, if any, why said temporary restraining order should not be made permanent. On such date, both parties appeared before this court, the secretary of state appearing by his counsel, Wm. F. Crowley, first assistant attorney general for the State of Montana, who filed on respondent's behalf a motion to quash the restraining order, and relator appeared by his counsel, John H. Risken, Esq., and A. W. Scribner, Esq. The cause was fully argued. Both litigants filed exhaustive briefs.

The cause was then submitted and taken under advisement by the court.

Thereafter, and on June 22, 1960, owing to the urgency of the matter, this court issued its order disallowing and denying respondent's motion to quash the temporary order and writ issued on June 6, 1960, and the court's order of June 22, 1960, further ordered that the temporary writ and injunction issued herein on June 6, 1960, be made permanent and that a written opinion would follow.

The questions presented by this proceeding are substantially these:

The Constitution of Montana provides at the present time by section 11, of Article XI, that, "The general control and supervision of the state university and the various other state educational institutions shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law. The said board shall consist of eleven members, *the governor, state superintendent of public instruction,* and *attorney general,* being members ex-officio; the other eight members thereof shall be appointed by the governor; subject to the confirmation of the senate, under the regulations and restrictions to be provided by law." Emphasis supplied.

The Legislature, by Chapter 191, Session Laws of 1959, attempted to propose an amendment to section 11, of Article XI of our State Constitution for submission to the people, which amendment originated in the Senate as Senate Bill No. 7 was passed by a two-thirds vote of the members elected to each house of the said Legislature and was then deposited in the office of the Secretary of State of Montana, on March 9, 1959.

It is contended by relator:

(1) That under the requirements of Chapter 191, the defendant is commanded and is proceeding to have printed upon the official ballot the title only of said Act. That said proposed constitutional amendments and the proposed title, as proposed, will require relator and all other voters to approve or reject the same

*in toto.* Each elector voting will be deprived of the opportunity to vote separately upon each of the two unrelated proposed amendments allegedly incorporated in the one Act of the Legislature.

(2) That the Act is unconstitutional, invalid, and void for the reasons that it violates section 9, of Article XIX, in that it provides for the submission to the qualified electors, of two distinct and unrelated amendments and subjects to the Constitution, without preparing or distinguishing the same separately, by number or otherwise, so that each can be voted upon separately, to-wit,

(a) an amendment pertaining to the control and administration of the elementary school system by a board of eight members appointed by the governor, and

(b) an amendment creating a separate board comprised of eight members to be appointed by the governor to be known as the board of regents, having general control and supervision over the University of Montana.

(3) That the Act, Chapter 191, supra, violates section 23, of Article V, of the Constitution of Montana, in that it contains "more than one subject", and the same are not clearly "expressed in the title" as it was proposed on the official ballot.

(4) That the Act violates section 40, of Article V, and section 12, of Article VII, of the Montana Constitution, in that it was never signed or otherwise approved or rejected by the governor of the State of Montana.

As this particular constitutional challenge raises questions never presented to this court before, and the questions raised are of great economic, political and wide concern to every parent, child and taxpayer in this state, we deem it necessary to again set forth the present provision of our State Constitution, section 11, of Article XI, which has been attempted to be amended, followed by the proposed amendment and then the title of the said proposed amendatory Act, that was ordered to be printed

on the official ballot, so that a complete understanding of the implications thereof may be fully understood.

Section 11, of Article XI, Montana Constitution, provides:

"The general control and supervision of the state university and the various other state educational institutions shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law. The said board shall consist of eleven members, *the governor, state superintendent of public instruction,* and *attorney general,* being members ex-officio; the other eight members thereof shall be appointed by the governor; subject to the confirmation of the senate, under the regulations and restrictions to be provided by law." Emphasis supplied.

The proposed amendatory Act as it appears in the Thirty-Sixth Session Laws of Montana 1959, as Chapter 191 thereof, is as follows:

"An act to Provide for the Submission to the Qualified Electors of the State of Montana an Amendment to Section 11, Article XI of the Constitution of the State of Montana Relating to the General Control and Supervision of the State University and the Various Other State Educational Institutions, to Provide for the Establishment of a State Board of Education Consisting of Eight (8) Members to be Appointed by the Governor, Subject to Confirmation by the Senate, Under the Regulations and Restrictions to be Provided by Law, to Provide That the General Control and Supervision of the Public, Free, Common Schools Shall be Vested in the State Board of Education; to Provide That the General Control and Supervision of the University of Montana Shall be Vested in a Board of Regents, Whose Powers and Duties Shall be Prescribed by Law, to Provide That the Board of Regents Shall Consist of Eight (8) Members, Appointed by the Governor, Subject to Confirmation by the Senate, Under the Regulations to be Provided by Law; to Provide for an Effective Date.

"*Be it enacted by the Legislative Assembly of the State of Montana:*

"Section 1. That section 11 of article XI of the Constitution of the State of Montana be amended as hereinafter provided, and that the question of such amendment be submitted to the qualified electors of the State of Montana, at the general election to be held in November of 1960.

"Section 2. That section 11 of article XI of the Constitution of the State of Montana be, and the same is hereby amended to read as follows:

"'Section 11. The general control and supervision of the *public, free, common schools* shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law. The said board shall consist of *eight (8)* members, appointed by the governor; subject to the confirmation of the Senate, under the regulations and restrictions to be provided by law. *The general control and supervision of the University of Montana shall be vested in a board of regents, whose powers and duties shall be prescribed by law. The said board shall consist of eight (8) members, appointed by the governor, subject to confirmation of the Senate, under the regulations and restrictions to be provided by law.'*

"Section 3. This amendment shall be submitted to the qualified electors of the State of Montana by being placed upon an official ballot provided by chapter 11 of title 23 of the Revised Codes of Montana, 1947, as amended by chapter 79 of the Session Laws of Montana of 1949, and as amended by chapter 72 of the Session Laws of 1953, and as provided by law; and there shall be printed on such ballots the title of this act and the following words:

"☐ For the above amendment

"☐ Against the above amendment.

"Section 4. The votes cast for and against the amendment herein proposed shall be counted, canvassed, and determined by such officials and in such manner as provided by law, and if a

majority of all votes cast at such election for and against such amendment shall be in favor of such amendment, the governor of the state shall so declare by public proclamation, and said amendment shall be in full force and effect as a part of the Constitution of the State of Montana from and after the date of July 1, 1961.

" (See attached opinion.)

"Note: Official opinion of Attorney General, dated February 27, 1959, states that approval of Governor is unnecessary on proposed amendment to constitution."

The proposed title to be placed upon the official ballot is as follows:

"The Form in Which the Question on Amending the Constitution Will be Printed on the Official Ballot at the General Election,

"November 8, 1960, Is as Follows:

"An Act to Provide for the Submission to the Qualified Electors of the State of Montana an Amendment to Section 11, Article XI of the Constitution of the State of Montana Relating to the General Control and Supervision of the State University and the Various Other State Educational Institutions, to Provide for the Establishment of a State Board of Education Consisting of Eight (8) Members to Be Appointed by the Governor, Subject to Confirmation by the Senate, under the Regulations and Restrictions to Be Provided by Law, to Provide that the General Control and Supervision of the Public, Free, Common Schools Shall Be Vested in the State Board of Education; to Provide that the General Control and Supervision of the University of Montana Shall Be Vested in a Board of Regents, Whose Powers and Duties Shall Be Prescribed by Law, to Provide that the Board of Regents Shall Consist of Eight (8) Members, Appointed by the Governor, Subject to Confirmation by the Senate, under the Regulations to Be Provided by Law; to Provide for an Effective Date.

564

"☐ For the Above Amendment
"☐ Against the Above Amendment"

The control, regulation and guidance of our free public schools of the State of Montana are of the most vital and controlling interest to every parent and adolescent student, as well as the public at large. The questions as to whether the parents and electors of this state want to retain their governor, their attorney general and their state superintendent of public instruction, as their elected constitutional officers and members of the State Board of Education to whom they may appeal for redress, as they may under the present Constitution, or whether they want to eliminate their elected governor, their attorney general and their superintendent of public instruction, from such State Board of Education, and substitute a separate wholly appointed Board therefor, and a second separate wholly appointed Board to control and supervise the State University, all as in the proposed amendment, are questions and matters of public policy. As to the merits or demerits of such matters of public policy this court may not express an opinion. Such public policy is expressed and determined first, by our Constitution which is the expression of the people themselves and second, by the exercise of the initiative and referendum, which is the direct action of the people and by the people's representatives in constitutional legislative action.

Some contention was made that certain articles of the Constitution were in some way separate and distinct from the rest of the Constitution. However, the Constitution, like a statute, must be considered as a whole. The division of our Constitution into sections, articles and chapters is a mere matter of convenience for reference purposes and is of no significance in applying rules of construction and interpretation. See State ex rel. Hinz v. Moody, 71 Mont. 473, 480 to 483, 230 P. 575, and Cruse v. Fischl, 55 Mont. 258, 175 P. 878.

Of course we agree with counsel that in considering this Act we start with the presumption that Chapter 191, Laws of

Montana of 1959, is constitutional. In a long line of cases this court has confirmed the rule that an Act of the Legislature will not be declared unconstitutional unless from the procedure or the act itself, it is clear and certain that there is a conflict with the Constitution. See Wheir v. Dye, 105 Mont. 347, 352, 353, 73 P.2d 209, and cases cited.

■ Relator sets forth some six grounds wherein the proposed amendment of the Constitution is alleged to be invalid. One of the grounds alleged, which we believe to be a fatal defect is the ignoring by the Legislature of the governor, in neglecting and refusing to present the proposed amendment or amendments to the governor in full as passed by the required vote of both the Senate and the House of Representatives for the governor's approval or disapproval, as mandatorily required by section 40, of Article V, of our Constitution which requires:

*"Every order, resolution or vote, in which the concurrence of both houses may be necessary * * * shall be presented to the governor, and before it shall take effect be approved by him, or, being disapproved, be repassed by two-thirds of both houses, as prescribed in case of a bill."* Emphasis supplied.

Certainly this requirement means just what it says, the word "every" used in a statute, is defined by Black's Law Dictionary (Deluxe ed.) as meaning "Each one of all; all the separate individuals who constitute the whole." Also see 15 Words and Phrases, "Every", p. 791, and supplement. See Webster's International Dictionary (2d ed.).

■ The above section 40, of Article V, is clear, certain, direct and unambiguous, and in the English language; it speaks for itself; it needs no interpretation; there is no conflict with any other provision of our State Constitution. Section 29 of Article III, requires this court to enforce as mandatory each section of the Constitution unless expressly declared otherwise in the Constitution itself.

Most constitutional provisions are *interpreted* as mandatory,

even where the Constitution does not contain an all-over provision such as our section 29, of Article III, which provides:

"The provisions of this constitution are mandatory and prohibitory, *unless* by express words they are declared to be otherwise." Emphasis supplied. With this provision there can be no doubt in this matter with regard to the over-all mandatory provisions of section 29, supra. This court has on many occasions declared that each of the provisions of the Constitution is mandatory and prohibitory, and this rule applies to every part of the Constitution, (State ex rel. City of Butte v. Weston, 29 Mont. 125, 129, 74 P. 415) and its declaration with reference to the subjects upon which it assumes to speak is conclusive upon the Legislature (In re Weston, 28 Mont. 207, 212, 72 P. 512, 514; State ex rel. Pierce v. Gowdy, 62 Mont. 119, 126, 203 P. 1115). There is no exception to the mandatory provisions of section 40, of Article V, and section 29, of Article III, anywhere in the Constitution.

The legislative department labors under certain constitutional restrictions, limitations and requirements in the same manner and degree as the executive department and the judiciary.

It is pertinent to note that the constitutional fathers and the people have made certain exceptions where they deemed it for the best interests of our form of government. As an example, in said section 40, of Article V, the following exceptions are made in that, any order, resolution or vote, not requiring the concurrence of both Houses and questions of adjournment and matters relating solely to the transaction of business of the two Houses need not be submitted or presented to the governor; thus resolutions and memorials of either individual House fall into that class, but there is not the slightest reference to a proposed constitutional amendment, because such *an act requires a vote* in each House *and the concurrence of both Houses.*

Also, in relation to this particular matter, it should be noted that section 9, of Article XIX, providing for the amendment of the Constitution requires, among other procedures, that

*"at said election the said amendment or amendments shall be submitted to the qualified electors of the state for their approval or rejection"*, not just a pre-determined title or an unintelligible statement of words.

Where, as here, under the mandate of section 40, of Article V, and section 29 of Article III, any vote of the Legislature requiring concurrence of both Houses must be presented to the governor for his approval or disapproval and unless this step is taken the vote is of no force or *effect* for any purpose unless the vote is presented to the governor for his approval or disapproval. In the latter case, in the event the vote or measure is repassed by two-thirds of both Houses, as in the case of a bill, it shall then be sent to the secretary of state for submission to the people.

It should be remembered that our Montana Constitution is unique among state constitutions. We find no other state constitution which contains the same provisions as ours. For these reasons, the decisions from other jurisdictions construing their state constitutions or the federal constitution have little value or weight here, as they construe constitutional provisions altogether unlike our own. They are not in point here.

For example, in Commonwealth ex rel. Attorney General v. Griest, 196 Pa. 396, 46 A. 505, 50 L.R.A. 568, pressed upon us by respondent as authority for his contention that a proposed constitutional amendment which has been passed by a two-thirds vote in both the State Senate and House of Representatives need not be presented to the governor for his approval or disapproval as required by section 40, of Article V, and enforced by section 29, of Article III, supra, of our State Constitution, it will be noted that the Constitution of Pennsylvania contains neither of the foregoing provisions but does contain an entirely different requirement for submission of their constitutional amendments (Penn.Const. Section 1, of Article XVIII). See Hilger v. Moore, 56 Mont. 146, 172, 182 P. 477; Victor Chemical Works v. Silver Bow County, 130 Mont. 308, 301 P.2d 730.

Another matter that should be pointed out is that for almost

three quarters of a century our state legislature and executive departments have interpreted our constitutional requirements as above-noted, and the session laws over the years, speak loudly of the submission of proposed constitutional amendments to the governor as required by section 40, of Article V, and section 29, of Article III, supra, until the Thirty-Sixth session of our Legislature of 1959. While legislative and executive practice, procedure, understanding and interpretation of constitutional questions is not determinative nor conclusive on this court, yet where such uniform practice has been followed for some seventy years it is at least persuasive of their understanding and interpretation of the constitutional requirements and of the procedure required.

Our written constitutional form of government, with the delicate checks and balances of each department by each of the other departments is just what distinguishes our form of government from the parliamentary, monarchial or dictatorial form. From our study of our constitutional convention and the Constitution itself, it is evident that the fathers of our Constitution, and the people themselves, so balanced the three departments of our government so as to check each one, and in mandatory language forbid each department from eliminating the participation of each of the other departments from their duty and from encroaching or transgressing upon the constitutional duties, responsibilities and prerogatives of each other. See State ex rel. Rankin v. Yegen, 79 Mont. 184, 255 P. 744; Durfee v. Harper, 22 Mont. 354, 56 P. 582; State ex rel. Woods v. Tooker, 15 Mont. 8, 37 P. 840, 25 L.R.A. 560.

For the foregoing reasons, we hold that Chapter 191 of the Laws of Montana 1959, is beyond any reasonable doubt in conflict with the mandatory provisions of our Constitution limiting legislative action, as here considered, and our plain duty is to declare the attempted amendment unconstitutional and void.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and ADAIR concur.

MR. JUSTICE ANGSTMAN concurring specially in the result.

I agree that the restraining order should be made permanent, but not for the reasons given in the foregoing opinion. I do not believe it is necessary for a proposed constitutional amendment to be submitted to the governor. I think this follows for two reasons.

First, section 1, of Article V, of our Constitution, specifically states that "The veto power of the governor shall not extend to measures referred to the people by the legislative assembly". While strictly speaking a proposed constitutional amendment may not be a "measure" within the meaning of section 1, of Article V, I think it could well be considered as coming within the spirit of that section.

Second, the Constition provides a method by which it may be amended. Section 9, Article XIX. It is a special provision relating to that subject and is not controlled by general provisions in the Constitution and particularly not by section 40 of Article V.

Section 9, of Article XIX, was followed here, so far as obtaining the necessary two-thirds vote of the members of both Houses was concerned. It then became the duty of the secretary of state to cause the amendment to be published as therein directed. It makes no provision for the submission of the proposed amendment to the governor.

In construing a Constitution the statutory rules of construction apply. 16 C.J.S., Constitutional Law, § 15, p. 71. And special provisions control over general ones. Id. § 25, p. 98. Here the special provision dealing with amendments to the Constitution was followed and that was sufficient.

I concur in the conclusion that the injunction should issue because I think the proposed amendment violates that part of section 9, Article XIX, of the Constitution, which provides: "Should more amendments than one be submitted at the same

election, they shall be so prepared and distinguished by numbers or otherwise that each can be voted upon separately.''

No useful purpose would be subserved in elaborating upon this subject. The statement of the facts in the foregoing opinion of Mr. Justice Bottomly shows that there is more than one proposition proposed to be submitted to the voters but all contained in the one amendment. The voters then must either accept or reject all of them together without the right to accept one and reject the rest, contrary to the above-quoted provision in section 9, Article XIX.

I think, too, it should be said that generally the courts should not interfere with the legislative process prior to its completion, 16 C.J.S., Constitutional Law, § 151 (1), p. 724, note 38, as we are doing here.

So far as I am concerned, I justify my position in this particular case because in so doing we are settling a question of vital public concern and in addition preventing the waste of taxpayers' money, a subject that ought to receive consideration by all departments of government, state and federal.