MR. JUSTICE WEBER
dissents from the opinion and order on reconsideration.
The majority contends that an unassailable fact is that the great majority of voters never saw the correct text of the amendment Cl- *113 30 as finally certified. The error in the voter information pamphlet was that the words “this full” were printed this full, instead of tins fuH. I emphasize that the pamphlet itself did not explain what is meant by underlining as compared to interlineation. While I agree that underlining commonly is used to designate material being added and interlineation to designate material being deleted, I suggest that the record does not demonstrate that this is knowledge which can be presumed to be held by all of the voters. The pamphlet itself contained the extensive printed arguments by the opponents to the measure which clearly set forth their opposition to the elimination of the words “this full” from the constitutional provision. I question that anyone who actually read the pamphlet would have been misled as to the positions of the opponents and the supporters of the amendment. The majority does not consider the publication by the Secretary of State which described the error in the voter pamphlets and was contained in a news release published throughout Montana. In addition, the majority does not consider the wide discussion of the Initiative in the printed media, the radio and the television, as well as the debate which was reported in the media. I conclude that the pamphlet gave the accurate information necessary for each voter to conclude whether to vote for or against the amendment. Nothing more was required. I conclude that there is no real basis for the declaration of unconstitutionality because of the pamphlet printing error.
The majority states that the record of the Constitutional Convention supports its statement that “nowhere do the constitutional framers discuss publishing less than the full amendment.” It is true that the record of discussions by the delegates does not answer the question of this intention. However, I believe that the sections of the Constitution speak for themselves. Following is the full text of Article XIV, Section 8 and Section 9:
“Section 8. Amendment by legislative referendum. Amendments to this constitution may be proposed by any member of the legislature. If adopted by an affirmative roll call vote of two-thirds of all the members thereof, whether one or more bodies, the proposed amendment shall be submitted to the qualified electors at the next general election. If approved by a majority of the electors voting thereon, the amendment shall become a part of this constitution on the first day of July after certification of the election returns unless the amendment provides otherwise.
“Section 9. Amendment by initiative. (1) The people may also pro *114 pose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state. That number shall include at least ten percent of the qualified electors in each of two-fifths of the legislative districts.
(2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each months (sic) for two months (sic) previous to the next regular state-wide election.
(3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection. If approved by a majority voting thereon, it shall become a part of the constitution effective the first day of July following its approval, unless the amendment provides otherwise. (Emphasis supplied.)”
The case held to be controlling by the majority, State ex rel. Woods v. Tooker (1894), 15 Mont. 8, 37 P. 840, pointed out that the 1889 Constitution required publication in full for three months, and publication in Tooker was made for only two weeks. In view of that constitutional requirement it was reasonable for the Court to reach the decision it did in Tooker. In contrast, Section 9(2) provides that the secretary of state shall cause the amendment to be published as provided by law. It is significant that the present Constitution does not include the words “in full” which were present in the 1889 Constitution and that in addition, the constitutional provision now requires publication as provided by law. Section 9(1) provides that the people may propose constitutional amendments by initiative and then states that petitions including the full text of the proposed amendment shall be signed by the electors. This demonstrates the ability of the delegates in the Constitutional Convention to clearly describe when full text is to be used. Those words are omitted from both paragraphs (2) and (3) of Section 9 as well as from Section 8. It is not necessary to read any Constitutional Convention proceedings to determine intent. The intent seems quite clear from Section 9(2) itself. There is no requirement for publication “in full” in our present Constitution.
I conclude that the Montana Liability Coalition (Coalition) has presented a strong argument with regard to the effect of the majority opinion. In substance, the Coalition questions whether the definition of “the amendment” as meaning “the full text of the amendment” for Section 9(2) of our Constitution can also be applied to *115 Section 8. In Section 8 the provision for submitting to the electorate an amendment proposed by the legislature itself is that “the proposed amendment” shall be submitted to the electors. In a similar manner, Section 9(3) provides that so far as submitting the initiative to vote is concerned, “the proposed amendment” shall be submitted to the electors. In analyzing Section 9(2) of the Constitution, the majority concludes that the words “the amendment” mean that the full text of the amendment must be published. The majority fails to explain why the full text should be published while adjacent paragraphs should be construed to require only a summary. The Coalition argues that the same logic as used by the majority can be applied to Section 8, raising a question as to referendums because in no instance was the proposed amendment submitted in full to the electors. Instead only a summary was used on the ballot. Similarly, under Section 9(3), the proposed amendments were not submitted in full to the qualified electors but were submitted in summary form only. I conclude that the Coalition has raised a significant question which follows from the majority interpretation of our Constitution. The purpose of publication and printing on the ballot is to provide adequate information to Montana voters. That purpose is not fulfilled by the fact that members of the legislature have considered the matter. I conclude that it can be argued that the conclusion of the majority could be applied to both Section 8 and Section 9(3) of the Constitution, requiring invalidation of referendum and initiative measures where the proposed amendment was not set forth in full in the ballot.
The majority has stated that Section 13-35-107, MCA, sets forth a one-year statute of limitations on actions to void an election ballot. I am not certain that the provision could be applied to a constitutional challenge.
For the foregoing reasons I would grant the petitions for rehearing and reconsideration.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICE GULBRANDSON concur in the foregoing dissent.